The maker of a promissory note and individual guarantors appeal from a judgment entered against them pursuant to a jury verdict, claiming: *Page 160 
(1) The trial court incorrectly instructed the jury that they could not find the guarantors liable on the note unless they also found the principal debtor liable.
(2) The testimony of an F.B.I. agent, even though relevant, was highly prejudicial, and should have been excluded because it suggested that a federal investigation of the events surrounding the case had been conducted.
(3) The trial judge should have instructed the jury that if the creditor dealt with the collateral in a commercially unreasonable manner, the creditor was not entitled to recover a deficiency.
The creditor cross-appealed, claiming that the trial judge erred in entering a judgment pursuant to the jury verdict which found the three individual guarantors liable for only one-third of the total debt.
The pleadings were lengthy, but a simple and concise statement of the claims, counterclaims and cross-claims is as follows:
The bank (Metro) sued the principal debtor and the individual guarantors, Sam Raine, Jr., Norman Ceravolo, and Jerome Lacy, to recover its debt, but also claimed that two of the individual guarantors, Raine and Ceravolo, had fraudulently procured a continuation of the notes and guarantees.
The debtor (Valley Mining) and the individual guarantors denied liability, set up some affirmative defenses, including the statute of frauds, usury and commercially unreasonable behavior, and filed a counterclaim in which they alleged that Metro had wrongfully repossessed and sold certain equipment (collateral) belonging to them. Metro denied this. Lacy, one of the guarantors, filed a cross-claim, in which he alleged that Ceravolo and Raine had fraudulently misrepresented certain facts to him and had conspired to defraud him.
The cause was heard before the Honorable George H. Wright, Jr., special judge, sitting for the Honorable Walter Bridges, who had recused himself, on March 19, 1979, and proceeded until the jury returned its verdict on the 14th day of April, 1979. On May 11, 1979, the trial judge entered a final judgment in which he ordered and decreed:
 (1) That the plaintiff Metro Bank have and recover of defendant Valley Mining Corporation the sum of $236,788.94 in compensatory damages.
 (2) That the plaintiff Metro Bank have and recover of defendant Sam Raine, Jr. the sum of $78,929.65 compensatory damages.
 (3) That the plaintiff Metro Bank have and recover of defendant Norman Ceravolo the sum of $78,929.65 compensatory damages.
 (4) That the plaintiff Metro Bank have and recover of defendant Jerome Lacy the sum of $78,929.64 compensatory damages.
 (5) That the plaintiff Metro Bank have and recover of defendant Sam Raine, Jr. the sum of $10,000.00 punitive damages.
 (6) That the plaintiff Metro Bank have and recover of defendant Norman Ceravolo the sum of $10,000.00 punitive damages.
 (7) That defendant Valley Mining Corporation have and recover of plaintiff Metro Bank the sum of $10,000.00 punitive damages.
 (8) That defendant and cross-plaintiff Jerome Lacy have and recover of defendants Sam Raine, Jr. and Norman Ceravolo the sum of $50,000.00 compensatory damages.
 (9) That all costs incurred herein are hereby taxed against the defendants, Valley Mining Corporation, Sam Raine, Jr., Norman Ceravolo and Jerome Lacy, for which execution may issue.
 I
Did the trial judge improperly instruct the jury in the law relative to the liability of a guarantor? Here's how the question arose. After the jury began deliberations, they sent a note to the court on the second day of their deliberations which read as follows: *Page 161 
 "If you want to give damages to the bank from all three defendants, which paper do you use?"
Thereafter, the court, with the consent of the attorneys for the parties, instructed the bailiff to tell the jury that they could use any of the verdict forms that were submitted to them at the start of their deliberations or they could write their own verdict. At 3:13 p.m. on the 14th day of April, 1979, the jury returned a verdict. The record shows the following occurrence:
 "THE COURT: All right, Ladies and gentlemen of the jury, have you arrived at a verdict or verdicts in this case?
"MR. COLEMAN: Yes, sir, we have.
"THE COURT: Mr. Coleman, are you the foreman?
"MR. COLEMAN: Yes, sir.
"THE COURT: Would you read the verdicts, sir?
 "MR. COLEMAN: We, the jury, find for the plaintiff, Metro Bank on its complaint against the defendants Sam Raine, Norman Ceravolo, and Jerome Lacy to each pay one-third of balance of two hundred thirty-six thousand seven hundred eighty-eight dollars and ninety-four cents.
"THE COURT: All right.
 "MR. COLEMAN: We, the jury find in favor of the Defendant-Cross Plaintiff Lacy and against the Defendants Raine and Ceravolo and assess his compensatory damages at fifty thousand dollars. We, the jury find for the Defendant Valley Mining Corporation on its counter claim alleging fraud against Metro Bank and assess the Defendant Valley Mining Corporation punitive damages of ten thousand dollars. We, the jury, find for the Plaintiff, Metro Bank, on its complaint against Defendant Sam Raine, Jr. and assess its damages at ten thousand dollars punitive damages.
 "THE COURT: All right. Let me ask you this: Is the first verdict the verdict against all of the defendants?
"MR. COLEMAN: Right. Raine, Ceravolo and Lacy.
"THE COURT: Is that compensatory or punitive damages?
 "MR. COLEMAN: That is compensatory. What the balance was owed the Bank after the equipment and everything was sold that they should pay the Bank what they owed them.
 "THE COURT: If you could, hand me those verdicts and I am going to let you go back out into the jury room just for a few minutes, ladies and gentlemen."
After discussing the verdicts with attorneys outside the presence of the jury, and over strenuous objection, the trial judge further charged the jury as follows:
 "THE COURT: * * * But you have not yet reached a verdict on the complaint of Metro Bank against Valley Mining Corporation. You recall Valley Mining Corporation was the one allegedly who signed those notes, executed the notes and the three that you have returned verdicts against were the guarantors. They signed the guarantee agreement there. So you still must return a verdict one way or the other as to the complaint of Metro Bank against Valley Mining Corporation. I remind you you have already returned a verdict on Valley Mining Corporation's counter claim against the Bank. You have returned a verdict on that. But you have not returned a verdict on the complaint of Metro Bank against Valley Mining Corporation. So at this time I must send you out for further deliberations until you reach a verdict on that. Under the law of the State of Alabama, guarantors on a note cannot be liable for the payment of that note unless the principal is liable. That is the law of the State of Alabama. Now you may retire at this time and continue your deliberations and I will let you take the verdicts back with you you have already rendered, but don't change these verdicts."
Shortly thereafter, the jury returned a verdict for Metro against Valley Mining in the sum of $236,788.94, which is the same amount as the total sum for which they had found the three guarantors to be liable. *Page 162 
We find that the trial judge correctly instructed the jury to return for further deliberations when it became apparent that the jury failed to return a verdict on Metro's claim against Valley Mining. In Hood v. Ham, 342 So.2d 1317 (Ala. 1977), this Court stated, in citing the rule that a trial court's authority to amend a jury verdict is limited to matters of form or clerical error and does not extend to matters of substance required to be passed upon by the jury:
 "This rule applies with equal force where there is a total absence of a jury verdict; and it is no answer to speculate that, in view of the verdict returned in the companion case, it is `apparent' what the jury `must have' intended. Upon demand of a jury trial, the plaintiff was entitled to have his cause adjudicated by a jury verdict. Where the jury returns no verdict whatsoever, there is no authority recognized in our law for the trial Court to enter a final judgment of dismissal." 342 So.2d at 1318.
We further find that the instruction that the guarantor of a note cannot be liable for the payment of the note unless the principal is found to be liable is an accurate statement of the law, and appropriate here, because we have examined the "Guaranty Agreement" executed in this case and find it is, in fact, a guaranty agreement, rather than a surety agreement, as claimed by Valley Mining.
In reaching our conclusion, we applied the following principles of law:
 "A guaranty in its technical sense is collateral to, and made independently of, the principal contract which is guaranteed; and the guarantor's liability is secondary rather than primary or original."
38 C.J.S. Guaranty § 2 (1943).
"A surety is bound with his principal as an original promissor; a guarantor is only bound if and when the creditor is unable to collect from the principal debtor." Davenport Harris Undertaking Co. v. Roberson, 219 Ala. 203, 205,121 So. 733 (1929).
We find no error in the trial judge's instruction to the jury on the law concerning the liability of a principal debtor and its guarantors.
 II
The second question we will address is whether the trial judge erred in allowing the F.B.I. agent, Gene Hutcherson, to testify in this case.
During the course of the trial, Metro offered the testimony of Hutcherson, an agent with the Federal Bureau of Investigation. Attorneys for the appellants strenuously objected to this testimony, but the court, after considering arguments of counsel outside the presence of the jury, permitted the agent to testify. The contested testimony was to the effect that Hutcherson had a conversation with Raine concerning a particular document described as Metro Exhibit 9-R (a purported power of attorney), which the agent stated Raine gave to him and that when he read it, he told Raine that as far as he was concerned, the document was no good and that Raine responded that "Yeah, you got to him before I did."
Appellants submit that the introduction of testimony by the F.B.I. agent greatly prejudiced the jury because it suggested that a federal investigation of the events surrounding this case had taken place while providing testimony of little probative value for the jury's consideration.
We are familiar with the rule that the trial court may exclude evidence, even though it is relevant, when it would serve comparatively little or no purpose except to arouse passion, prejudice or sympathy of the jury [Gamble, McElroy'sAlabama Evidence, 3d ed. § 21.01 (4)], but we are also convinced that whether evidence should be excluded because it is unduly prejudicial is largely within the discretion of the trial court. Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961).
Extensive arguments were presented to the trial judge both for and against the appellants' motion to exclude the agent's testimony. Efforts to resolve the issue by compromise failed. The judge finally overruled the motion to exclude the evidence and the agent was permitted to testify. It *Page 163 
seems clear from the record designated by appellants that the trial court gave adequate consideration to this claim of prejudice and determined that the probative value of the evidence outweighed its prejudicial effect, if any. We must point out that the record designated by the appellants does not contain all of the testimony presented at the trial. In fact, the record contains only a portion of the testimony. In view of that fact, we are unable to determine whether the error, if any, was prejudicial. Rule 45, A.R.A.P.
In short, the appellants have failed to convince us that the trial judge abused his discretion.
 III
The issue we now address is one of first impression, that is, whether a finding of commercially unreasonable behavior by a creditor should bar the creditor's right to recover an outstanding deficiency on a note. At trial, the appellants contended that a finding of commercially unreasonable behavior should bar the creditor from recovering a deficiency after the collateral had been sold. Metro, on the other hand, argued that the better rule was to have the trier of fact calculate the damages suffered by the debtor due to the commercially unreasonable conduct and then set-off that amount against any deficiency the creditor may be entitled to recover. The trial judge adopted the latter method and instructed the jury as follows:
 "I charge you, members of the jury, that should you find that the plaintiff failed to dispose of collateral in a commercially reasonable manner, this would not result in the plaintiff's forfeiture of its right to a deficiency judgment, but would only require a reduction of the claimed deficiency by the amount of any loss resulting from any such failure."
Whether commercially unreasonable behavior by the creditor should affect the creditor's right to recover the outstanding deficiency on a note, as we have already indicated, is a matter of first impression for this Court. Other courts do not agree on what is the better rule. Indiana allows a set-off. California has adopted a rule which bar recovery.
In Hall v. Owen City State Bank, 370 N.E.2d 918, 926-928
(Ind.App. 1977), it was stated:
"The cases decided in other states are hopelessly divided on the question as to whether the secured party should be barred from recovering a deficiency judgment from the debtor when there has been sufficient notice of the disposition of collateral after repossession. In addition to these courts, it seems that the commentators are also in disagreement on this question. From the language of UCC § 9-504, it appears that the drafters of the UCC either did not consider this question or else decided to leave the question open. At least one notable authority has stated that the drafters indeed failed to consider this issue.
"It has been argued that because § 9-504 (2) and § 9-502 (2) specifically give the secured party a right to collect any deficiency and because there is no language in § 9-504 to indicate that a creditor should be barred from a deficiency, the courts should have no authority to supply such a sanction. In contrast, the language of § 2-706, which allows the seller of goods to resell those goods after breach by the buyer and collect damages from the buyer (much like a repossession sale and suit for deficiency judgment) strongly implies that notice to the buyer in that case is a condition precedent to the recovery of damages.
"It can also be argued that the adoption of a rule which strictly bars a deficiency judgment in cases of faulty notice contravenes the intent and purpose of the UCC. First of all, as stated above, the drafters of the UCC intended to do away with rigid rules of law designed to govern in all situations in favor of more fluid guidelines which allow a case by case analysis. It was hoped that this procedure would allow parties to reach the merits of each case instead of becoming entangled in procedural technicalities: *Page 164 
 "`Article 9 imposes few formal requirements and relies instead on the general obligation of commercial reasonableness. It was hoped that Article 9 default litigation would reach, and be decided on, the merits of the case without being deflected either by the debtor's allegations of a technical defense or the secured parties' demonstration of equally technical compliance with formalities. 2 Gilmore, Security Interests and Personal Property, § 44.9.4 at p. 1264 (1965).'
"Furthermore, the policy of the UCC as expressed in § 1-106 is to allow full recompense to an aggrieved party by a liberal application of the remedies provided in the UCC and to avoid the assessment of penal damages, unless such damages are expressly allowed by the UCC or other law. It would seem that an automatic denial of a judgment for the remaining portion of a debt would amount to a rejection of that policy. The Nebraska Supreme Court, in rejecting a strict rule barring deficiency judgments because of insufficient notice, also felt that such a rule would be unduly punitive: `No sound policy requires us to inject a drastic punitive element into a commercial context.'Cornett v. White Motor Corp. (1973), 190 Neb. 496, 501,209 N.W.2d 341, 344, 13 UCC 152.
"Probably the most persuasive argument for allowing a secured party to proceed with an action for a deficiency judgment is the fact that the UCC has already provided the debtor with a remedy in § 9-507. Under the latter section, if a secured party is not proceeding properly, the debtor may either restrain the creditor from proceeding further, or may recover from him any loss that the debtor may have suffered due to the secured party's failure to comply with the provisions of Article 9. Further protection is afforded under § 9-507 to the debtor in a consumer transaction in that a minimum damage figure is set out, which roughly equals the interest charge plus 10% of the cash price of the goods. In addition, under the provision of § 5-103 of the Uniform Consumer Credit Code, IC 1971,24-4.5-5-103, the debtor is not liable for any deficiency where the secured party elects to repossess goods which had a price of $1100.00 or less and which were a part of a consumer credit sale.
"Some rather persuasive arguments have also been advanced in favor of barring deficiency judgments in all cases where the secured party does not proceed properly. Such a rule would seem to be easier to apply, might bring about more uniform results and could possibly force creditors to be more careful in giving notice to debtors. Furthermore, there is nothing in the language of the UCC to suggest that the remedy provided in § 9-507 was intended to be an exclusive remedy. Section 1-103 brings traditional common law into play, such as equitable principles and principles of justice and fair play, which should suggest that a creditor should not be allowed a deficiency judgment when he breaks the law:
 "`The rule and requirements are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment. Atlas Thrift Company v. Horan (1972), 27 Cal.App.3d 999, 104 Cal.Rptr. 315, 11 UCC Rep. 417, 426.'
"It must also be considered that by failing to take proper steps to notify the debtor, the secured creditor can effectively deprive the debtor of his right to redeem the collateral under § 9-506 and his right to protect his interest by procuring bids or buyers at any private or public sale that is held.
"After considering both the cases and policy arguments on this issue, we feel that the better rule of law would allow the secured creditor a right to an action for a deficiency judgment notwithstanding a failure to send proper notice under IC 1971, 26-1-9-504 (3). In addition to the reasons cited above, we feel that the UCC should function on the premise that the majority of commercial transactions are carried out in good faith. In those cases in which the secured creditor has not complied with the appropriate notice provisions, or has otherwise not proceeded in good faith, it is better *Page 165 
to adopt a more flexible standard which will allow the secured party to recover the damages caused by the debtor's breach, but which will also allow protection to the debtor on a case-by-case basis. The debtor is provided a remedy in IC 1971, 26-1-9-507 and we see no reason to attach a further penalty to the creditor by declaring an automatic forfeiture of his right of a deficiency judgment."
Resolving the same issue, the California Court of Appeal opined:
 "The most natural and reasonable construction of the statutory language, in the light of the legal background, the realities of the relationships involved between secured creditors and debtors who have defaulted and their respective financial resources for engaging in litigation, all lead to the conclusion that the right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice.
 "The rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment.
 "Plaintiff in the instant case clearly failed to comply with section 9504, subdivision (3), of the Commercial Code in at least two respects. He failed to give the required notice and he failed to conduct the sale in a commercially reasonable manner. We hold this failure to be a bar to a deficiency judgment where, as here, such failure was raised as an affirmative defense." Atlas Thrift Co. v. Horan, 27 Cal.App.3d 999, 1009, 104 Cal.Rptr. 315, 321 (1972).
We find the Indiana rule to be the better one; therefore, we adopt it and hold that the trial judge's instruction was not erroneous. Our holding is limited, however, solely to the issue of whether commercially unreasonable behavior should constitute a bar to the recovery of a deficiency or whether the damages from such conduct should be set off against the total deficiency. The particular behavior in this case and the question of whether such behavior was commercially unreasonable are not presently before this Court. As we have already indicated, the full record was not designated.
 IV
As previously noted, the jury's verdict against the guarantors provided that ". . . each pay one-third of balance due of two hundred thirty-six thousand seven hundred eighty-eight dollars and ninety-four cents." The trial judge entered judgment against each guarantor for a third of that amount, which the jury also found to be the total amount of Valley Mining's indebtedness to Metro on the subject notes.
The trial judge overruled Metro's motion for judgment notwithstanding the verdict. Metro argued that the jury was attempting to apportion the damages, contrary to law, and the guaranty agreements provided that each guarantor was severally liable for the debts of Valley Mining.
Cross-appellants have not designated the testimony of witnesses which would sustain their claim that there was no evidence to support the jury verdict. The rule is that where there was evidence before the trial court which is not before us which may have influenced it in arriving at the conclusion it reached we do not disturb that finding. Eaton v. Shene,282 Ala. 429, 212 So.2d 596 (1968); Barnett v. Millis, 286 Ala. 681, 246 So.2d 78 (1971). Additionally, where all the evidence is not in the record, it will be presumed that the evidence was sufficient to sustain the verdict or judgment. See, Davis v.City Federal Savings Loan Assn., 288 Ala. 236, 259 So.2d 262
(1972).
Without a full record of the evidence before us, we are unable to find that there was no credible evidence to support the jury's finding as to the extent of each guarantor's liability. Rule 45, A.R.A.P.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 166