426 So.2d 416 (1982)
FIRST ALABAMA BANK OF MONTGOMERY, N.A.
v.
Jim D. PARSONS, James L. Whitehead, and B & E Steel Services, Inc.
Jim D. PARSONS, James L. Whitehead, and B & E Steel Services, Inc.
v.
FIRST ALABAMA BANK OF MONTGOMERY, N.A.
80-750, 80-774.
Supreme Court of Alabama.
September 24, 1982.
On Rehearing February 11, 1983.
*417 James A. Byram, Jr. and Eric G. Bruggink of Steiner, Crum & Baker, Montgomery, for appellant.
Jere L. Beasley of Beasley & Wilson, Montgomery, for appellees.
JONES, Justice.
This case has been appealed once before. On the first appeal, the Court of Civil Appeals, 390 So.2d 640, reversing a summary judgment adverse to Plaintiff/Bank, held that, although the two individual Defendants, as guarantors, were debtors within the meaning of the U.C.C. (Code 1975, § 7-9-105(1)(d)), and thus entitled to notice pursuant to § 7-9-504(3), the failure of Bank to comply with the notice requirements did not, as a matter of law, bar Bank's action for a deficiency judgment. Relying on Valley Mining Corporation, Inc. v. Metro Bank, 383 So.2d 158 (Ala.1980), the Court of Civil Appeals held that Bank's commercially unreasonable behavior in its failure to comply with the notice of disposition of the secured property, while not acting as a total bar as a matter of law to Bank's deficiency claim, was subject to Defendants' right of set-off for damages due to Bank's non-compliance.
At the conclusion of the evidence at the second trial, the trial court granted Bank's motion for directed verdict as to certain of Defendants' counterclaims for conversion; and the case went to the jury on Bank's deficiency claim and Defendants' counterclaims raising the commercial unreasonableness of the sale of the collateral, and also on Defendant Whitehead's counterclaim for fraud. The jury returned a general verdict in favor of Defendants on Bank's claim, and against Bank on Defendants' counterclaims, awarding damages of $76,500.00.

On The Appeal
Bank's appeal challenges certain trial court rulings relating to Defendants' counterclaim for damages, which was based primarily on the alleged commercially unreasonable behavior of Bank in failing to comply with the notice provision of § 7-9-504(3). Defendants B & E and Parsons cross appeal, challenging the trial court's grant of Bank's motion for summary judgment as to Defendants' conversion claim.
Because the applicable legal principles are set forth in the Court of Civil Appeals' *418 opinion on the first appeal of this case, citing Valley Mining Corporation, Inc., supra, no lengthy discussion of the issues raised on this appeal is necessary.
On the first appeal of this case, the Court of Civil Appeals, following the explicit language of part III of this Court's opinion in Valley Mining stated:
"Application of the Valley Mining rule, which we are bound by, to the facts at hand leads us to the conclusion that both insufficient notice and total lack of notice are commercially unreasonable behavior, but that neither bars a secured party's recovery of a deficiency judgment. The court in Valley Mining did note that damages resulting from the creditor's failure to meet the notice requirement may be set off against the total deficiency." First Alabama Bank of Montgomery, N.A. v. Parsons, 390 So.2d 640, 643 (Ala. Civ.App.1980), hereinafter Parsons I.
In the second trial, the trial judge instructed the jury accordingly:
"Now, the law says that not only should a person receive notice, but proper notice would contemplate that if there was a change in the time and that sort of thing, that there also should be proper notice. Now, in looking at that proper notice, the [Supreme] Court has said that insufficient notice of a default sale is commercially unreasonable behavior. They don't say it's a commercially unreasonable sale, but it says it's commercially unreasonable not to give proper notice.
"Now, it goes on and further says that both insufficient notice and total lack of notice are commercially unreasonable behavior, but that neither bars a secured party's recovery of a deficiency judgment. These are things that you can take into consideration, and that damages resulting from the creditor's failure to meet the notice requirement may be set off against the total deficiency."
We are in accord with the Court of Civil Appeals' holding in Parsons I; nonetheless, we hold that the facts of this case did not warrant submission of Debtors' counterclaims against Bank's deficiency claim. "The principal limitation on the secured party's right to dispose of collateral is the requirement that he proceed in good faith (U.C.C. 1-203) and in a commercially reasonable manner (U.C.C. 9-504)." U.C.C. 9-507, Comment 1.
While a total failure of notice is likely to be evidence of bad faith on the creditor's part, insufficient notice, although commercially unreasonable, does not necessarily preclude the requisite good faith in collateral disposition. Further, while technical compliance with the U.C.C. provisions can lead to unjust results, so, too, can mere technical failure of compliance. Therefore, in cases of insufficient notice, as opposed to total lack of notice, an even closer examination of the evidence is warranted to determine the validity of counterclaims as a condition to the application of the Valley Mining set-off rule.
Notice of a sale of collateral should be sufficient to protect a debtor's interests in the property. Turning to the record, we find that the evidence is without dispute that Bank originally furnished notice to Debtors. This notice would have satisfied the U.C.C. provisions had the sale proceeded privately any time after 12:00 noon, February 19, 1979. But the sale was a public one, and herein lies Bank's failure to comply with the notice requirements. See U.C.C. 9-504(3). Although the notice furnished was technically insufficient, barring the presence of bad faith or fraud on Bank's part, the purpose of the U.C.C. provisions are fulfilled and Debtors' counterclaims are unwarranted.
What evidence of damages by way of counterclaim is presented here? The record shows the collateral was sold for $12,500.00, and two weeks later resold for $18,000.00. Opinion testimony was offered fixing the value of the collateral at "$30,000.00 to $35,000.00." In this respect the U.C.C. is explicit:
"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of *419 itself sufficient to establish that the sale was not made in a commercially reasonable manner." U.C.C. 9-507(2).
We are of the opinion, and so hold, that Debtors failed to show the actual market value of the collateral on the day it was sold was substantially higher than the $12,500.00 selling price.
Except for the claim for conversion on behalf of B & E and Parsons  a point which is addressed under the cross appeal portion of this opinion  only Defendant Whitehead claims any damages independent of Bank's notice violation. The substance of Whitehead's fraud claim is that Bank advised him to "sit tight and don't worry" because Bank would contact him "to tell [him] what the status of B & E was." It is undisputed that subsequent to this conversation, Bank sent a letter to B & E, with copies to both Parsons and Whitehead, which complied specifically with Bank's earlier representation to Whitehead to inform him of the status of the accounts. In addition to informing the parties that Bank had applied B & E's checking account to the company's past-due, unsecured loan, giving the specific amounts charged and the principal balance still due, the letter made demand for full payment of both notes and conditioned the nonpayment by a date certain upon Bank's possession of the collateral. This evidence, when taken with all of the surrounding circumstances revealed by the record, is insufficient to support a reasonable inference of the requisite element of intent to deceive.
We hold, therefore, as to the appeal, that there was insufficient evidence to support a jury finding of damages on the counterclaims. Bank's technical failure to comply with the notice requirements of the U.C.C., when balanced against its good faith conduct in protecting Debtors' interests in the repossessed collateral, on the facts of this case, renders Debtors' counterclaims invalid and the set-off rule inapplicable.
We emphasize that the basis for this holding is our finding, as a matter of law, that the quality of the Debtors' proof  respecting the market value of the repossessed collateral  is insufficient to establish the requisite causal relationship between the failure of notice of the sale and Debtors' alleged damages. We acknowledge that had the proof of value, for example, consisted of a standardized price list, established and recognized by the heavy machinery industry (such as the "Blue Book" used in the used car industry), so as to impugn the good faith of the public sale conducted by the Bank, a different situation would be presented.
Likewise, we would have no difficulty sustaining the counterclaim award if the debtors' evidence respecting the property's market value had furnished a factual inference that a prospective buyer stood ready, willing, and able to pay the increased price except for the lack of notice, thus establishing the requisite legal nexus between the alleged damages and the creditor's violation of the notice requirement.
Where, as here, however, Debtors merely offered proof that the property sold for a higher price shortly after Bank's sale and that the property had a higher market value, the causal relation link between the Debtors' alleged loss and the Bank's notice violation has not been established.
Unquestionably, if the Bank had complied with the notice requirement, the Debtors' collateral post-disposition claim against the creditor, under the instant facts, would be foreclosed by the applicable provision of the U.C.C. We hold simply that evidence of higher valuation of the repossessed security, which falls short of impugning the good faith of the creditor's disposition will not support a counterclaim in a suit for a deficiency judgment.
We remand this cause for a determination of Bank's deficiency claim.

On the Cross Appeal
Debtors'/Appellees' contention on cross appeal that the trial judge erred in not allowing the conversion count to go to the jury is without merit. The evidence is without dispute that Bank, pursuant to the loan agreement, applied the balance of B & *420 E's checking account to the debt on the unsecured loan. There is a total failure of proof on behalf of Debtors that such action on the part of Bank supports an actionable claim for conversion. Because our holding is based on an insufficiency of the evidence, we need not address Bank's contention of res judicata.
As to the appeal, the judgment is reversed and remanded. As to the cross appeal, the judgment is affirmed.
AS TO THE APPEAL: REVERSED AND REMANDED.
AS TO THE CROSS APPEAL: AFFIRMED.
SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and ALMON, J., dissent.
FAULKNER, J., recuses himself.
TORBERT, Chief Justice (dissenting).
I dissent. Initially, I agree that the trial court correctly granted a directed verdict on the claim for conversion.
The trial court properly followed Valley Mining Corp., Inc. v. Metro Bank, 383 So.2d 158 (Ala.1980), in holding that the bank would have the right to a deficiency judgment following a sale of the collateral in a commercially unreasonable fashion, and that the appellees would be entitled to set off against the deficiency judgment any damages resulting to them because of the commercially unreasonable sale. Further, if the amount which would have been realized by a commercially reasonable sale is greater than the sale price plus the deficiency, the Bank would be liable on the counterclaim to the debtor for the difference. This holding is supported explicitly by the language of the Code.
"If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part."
Ala.Code § 7-9-507(1) (1975) (emphasis added).
In the case before us, the debtors did produce some evidence of the price that would have been realized if the sale had been conducted in a commercially reasonable manner. Several witnesses testified concerning the value of the collateral. Saxton Raines, an experienced steel man, testified without objection that the truck-crane had a fair market value of $30,000 to $35,000. Both Defendant Parsons and Defendant Whitehead testified that the fair market value of the collateral was $30,000 to $35,000. The Bank's own loan file showed a value of $30,000. If the jury believed this testimony, then the sale at $12,000 of collateral worth at least $30,000 would have resulted in damages of $18,000 to the defendants. Since the defendants owed the Bank $6,000 on the deficiency, they should be entitled to recover $12,000 from the Bank.
The majority opinion appears to relate the debtor's right to a set off and counterclaim for damages to a showing of bad faith on the part of the secured party in the disposition of the collateral. This approach would limit Valley Mining to those situations where there is bad faith and a commercially unreasonable sale of the collateral. Specifically, the majority writes, "Barring the presence of bad faith or fraud on bank's part, the purpose of the U.C.C. provisions are fulfilled and debtor's counterclaims are unwarranted." I can find no support in the Code provisions or the case law for this dual requirement. The majority relies on a reference in Comment 1 of Ala.Code § 7-9-507 (1975), to the requirement that the secured party "proceed in good faith (Section 7-1-203) and in a commercially reasonable manner." I would hold that a secured party is liable for damages sustained by the debtor where a sale is made in a commercially unreasonable manner because of the more specific code provision: "[E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Ala.Code § 7-9-504(3) (1975). Thus, I would affirm the judgment based on the *421 jury verdict on the counterclaim for damages resulting from a commercially unreasonable sale of the collateral.
ALMON, J., concurs.
ON APPLICATION FOR REHEARING
JONES, Justice.
We granted rehearing to re-examine two aspects of our holding that the trial court erred in not directing a verdict for Bank on Debtors' counterclaim seeking damages for a commercially unreasonable sale of the repossessed collateral.
In essence, the Debtors' challenge to our holding is two pronged: 1) that our strict causation rule places on the debtor too heavy a burden to prove his counterclaim in light of our holding that failure of compliance with the notice requirements constitutes commercially unreasonable conduct as a matter of law; and 2) that, under our liberal test of evidence rule, we have applied the wrong standard of review for gauging the sufficiency vel non of the evidence.
In other words, Debtors complain that their right to counterclaim for damages in a creditor's claim for a deficiency judgment, which right is grounded in the creditor's failure to comply with the notice requirements, is rendered virtually futile if the debtors' burden is to show by positive testimony that the Debtors' loss is directly connected to, or flowed directly from, the creditor's failure to comply with the provisions of the Act.
We cannot accede to this prong of the Debtors' contention. Section 7-9-507 mandates our application of the causation test. We quote the pertinent language from subsection (1):
"If it is established that the secured party is not proceeding in accordance with the provisions of this part .... the debtor ... has a right to recover from the secured party any loss caused by a failure to comply.

..." (Emphasis added.)
Our original holding that the trial judge erred in not granting a directed verdict as to the counterclaim was grounded primarily on subsection (2) of § 7-9-507. This subsection explicitly states that disparity between the resale price and a price later shown to be obtainable is not sufficient, standing alone, to establish that the sale was not conducted in a commercially reasonable manner. Having previously determined that the Bank's sale was otherwise conducted in good faith and in a commercially reasonable manner, we concluded that the evidence indicating the collateral had a higher market value than the sale price was insufficient as a matter of law to furnish a basis upon which a jury could infer a causal nexus between the alleged loss resulting from the only commercially unreasonable conduct present  the lack of notice.
It should be noted here that § 7-9-504(3) specifies that every aspect of the sale or disposition must be "commercially reasonable." Once we have determined that a given sale was conducted in a commercially unreasonable manner, as we have here because of the lack of notice, and that there were no other aspects of the sale performed in a commercially unreasonable manner or in bad faith, as we also have done, then the only questions that remain are those of causation and damages. Therefore, subsection (2) of § 7-9-507 is inapplicable to the resolution of the causation and damages questions.
While we adhere to the strict causation rule, mandated by the statute and announced in the original opinion, our restudy of the record and the applicable U.C.C. provisions convinces us of the correctness of the second prong of the Debtors' contention  that we applied the wrong standard of review of the evidence. We find that the evidence does support some inference of causal relationship between the lack of notice and the Debtors' claim of damages. This evidence was sufficient to defeat a directed verdict motion; and, because of this, it is likewise sufficient to overcome a motion for J.N.O.V.  the test being the *422 same for the two motions. Bennett v. Cole [1982], 426 So.2d 832 (Ala.1982).
As to the causal element, however, we believe Bank's post-judgment alternative motion for a new trial, grounded on the great weight and preponderance of the evidence, should have been granted. The Debtors, in their original brief, singled out the unreasonableness of the sale in two particulars: 1) the deficient notice; and 2) the insufficient sales price. The Debtors' evidence of an insufficient sales price consists of expert testimony placing the market value of the disposed of collateral between $30,000 and $35,000, approximately three times the sale price, and indicating that the public sale purchaser almost immediately resold the equipment in the same market for $5,000 more than he paid for it, making almost a fifty percent profit.
Such a discrepancy, when substantial, is relevant to the issue of whether the lack of notice caused damage. A substantial disparity between the market value on the date of disposition and the sale price actually brought is evidence of damage caused by something, just as absence of any disparity would be evidence that there was no damage.
Although the evidence presented was not totally lacking of probative value as to the causal relationship between the Debtors' damage and the lack of notice, such evidence, without more, was clearly against the great weight and preponderance of the evidence when balanced against the evidence showing the sale was conducted in good faith and was commercially reasonable in all other aspects.
If the Debtors' evidence as to the disparity between the fair market value and the selling price was not greatly outweighed by the Bank's evidence as to its good faith and commercial reasonableness in the other aspects of the sale, then the verdict should be upheld, there being sufficient evidence produced to allow a jury to infer causation. But here, even though Debtors have met their initial burden of producing enough evidence to defeat directed verdict and J.N. O.V. motions, the probative value of such evidence is so slight in establishing causation, that a verdict based on such evidence, when weighed against the Bank's evidence which vitiates the causal link, would be manifestly unjust and palpably wrong. First Alabama Bank v. Coker, 408 So.2d 510 (Ala.1982).
We emphasize that proof of defective notice, while sufficient of itself to constitute commercially unreasonable conduct, does not of itself furnish a reasonable inference of a causal relationship between this sole defect in the sale and Debtors' alleged damages. Rather, it is this lack of notice in combination with the substantial increase in sales price and the expert testimony of market value that meets the minimum test of sufficiency as to the causation element of Debtors' counterclaim.
We emphasize further that Bank's evidence of an otherwise commercially reasonable sale does not alter the fact that its failure to comply with the notice provision constituted commercially unreasonable conduct as a matter of law. To be sure, evidence that a sale was otherwise commercially reasonable is relevant to the causation issue, and it is on this issue that we have evaluated the preponderance of the evidence.
After indulging all presumptions in favor of its validity, we find that the verdict favorable to Debtors on their counterclaim is so against the great weight and preponderance of the evidence as to require that the judgment be set aside. See Chavers v. National Security Fire & Casualty Co, 405 So.2d 1 (Ala.1981). We conclude, therefore, that the trial judge ruled correctly in denying Bank's motions for a directed verdict and for J.N.O.V, but erred in not granting Bank's alternative motion for a new trial. The application for rehearing is granted as to the appeal; and the judgment as to the counterclaim is reversed and remanded for a new trial on Bank's claim for deficiency and Debtors' counterclaim, which is limited to compensatory damages, if any. As to the cross-appeal, the application for rehearing is overruled and the judgment is affirmed.
*423 APPLICATION FOR REHEARING GRANTED AS TO APPEAL AND OVERRULED AS TO CROSS-APPEAL; REVERSED AND REMANDED AS TO COUNTERCLAIM; AFFIRMED AS TO CROSS-APPEAL; OPINION EXTENDED.
TORBERT, C.J., and SHORES, BEATTY, and ADAMS, JJ., concur.
EMBRY, J., dissents.
FAULKNER and ALMON, JJ., recuse themselves.
EMBRY, Justice (dissenting):
By dissenting I wish to reiterate my views expressed this day in Marion v. Hall [MS. January 14, 1983] (Ala.1983). I have, upon reflection, concluded that I was in error when concurring with the majority on original deliverance.