445 So.2d 889 (1984)
The FIRST NATIONAL BANK OF DOTHAN
v.
RIKKI TIKKI TAVI, INC.
82-249.
Supreme Court of Alabama.
January 27, 1984.
James D. Farmer of Farmer & Farmer, Dothan, for appellant.
No brief for appellee.
TORBERT, Chief Justice.
The First National Bank of Dothan appeals from an order denying its motion for a new trial in an action on a promissory note against Rikki Tikki Tavi, Inc. The Bank contends the jury verdict awarding $32,667 to Rikki Tikki Tavi is against the great weight and preponderance of the evidence. We agree.
The Bank sold certain restaurant equipment securing a debt that was evidenced by the promisory note in question. The Bank applied the proceeds from that sale ($55,000) to the balance due on the note, and then sued for the deficiency. Rikki Tikki Tavi counterclaimed, alleging that the Bank's sale of the collateral was not conducted in a commercially reasonable manner as required by Code 1975, § 7-9-504.
The trial court directed a verdict in favor of the bank on the original complaint. The question of "commercial reasonableness" was then submitted to the jury under the counterclaim of Rikki Tikki Tavi. It returned a verdict on the counterclaim, and judgment was entered accordingly.
The sole issue here is whether the verdict is so against the great weight and preponderance of the evidence as to require a new trial. Myers v. Evans, 287 Ala. 710, 255 So.2d 581 (1971).
*890 Code 1975, § 7-9-504, authorizes a secured creditor to sell, lease, or otherwise dispose of any collateral in order to cover the balance due on a promissory note in the event of default by the debtor. "The principal limitation on the secured party's right to dispose of collateral is the requirement that he proceed in good faith (Section 7-1-203) and in a commercially reasonable manner. See Section 7-9-504." Code 1975, § 7-9-507, Comment 1. "[E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Code 1975, § 7-9-504(3). The sufficiency of the price obtained at a sale authorized by Code 1975, § 7-9-504, is one of the "terms" of the disposition, and is relevant to whether the sale was commercially reasonable. Associates Finance Company of Nebraska v. Teske, 190 Neb. 747, 212 N.W.2d 572 (1973); First National Bank of Bellevue v. Rose, 188 Neb. 362, 196 N.W.2d 507 (1972).
In First Alabama Bank of Montgomery v. Parsons, 426 So.2d 416 (Ala.1982), this Court held that in order for a debtor to establish a right to recover against a secured creditor under the provisions of Code 1975, § 7-9-507, in the absence of commercially unreasonable behavior amounting to bad faith, the debtor must prove both that an aspect of the disposition sale was commercially unreasonable and that such unreasonableness was the cause of the debtor's loss. In other words, the debtor must prove causation and damages, as well as commercial unreasonableness, in the absence of bad faith. Parsons, at 419.
After a careful review of the record, we conclude that the verdict, which necessarily found that the Bank's conduct was commercially unreasonable, is against the great weight and preponderance of the evidence, and, therefore, we reverse and remand for a new trial. There was conflicting testimony concerning the market value of the collateral. Estimates from the experts testifying for both parties ranged from about $55,000 (the sale price) to about $220,000. However, disparity in price between the market value of the collateral and the price for which it actually sold is not "of itself sufficient to establish that the sale was not made in a commercially reasonable manner." Code 1975, § 7-9-507(2). "If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." Id. As it is undisputed that there is no recognized market for collateral of this kind in Dothan, Alabama, the issue is whether the bank otherwise sold in conformity with reasonable commercial practices among dealers in this kind of collateral.
Pierce Flatt, then executive vice president of the Bank, testified as to the procedure the Bank followed in arranging the sale. Notice of the sale was sent to Rikki Tikki Tavi and was published in a local newspaper. The bank contacted three local restaurant equipment dealers and obtained appraisals from two of them. The dealers making appraisals offered to buy the equipment at their appraised prices, which were substantially lower than the eventual sale price. The Bank notified officials of Rikki Tikki Tavi and asked if they knew of any potential buyers, and they answered that they were "looking." This is in keeping with the rule that notice to the debtor is required, so that, among other reasons, he can protect his interest in the property by finding a buyer. Wells v. Central Bank of Alabama, N.A., 347 So.2d 114, (Ala.Civ. App.1977).
Representatives of two of the three restaurant equipment dealers who testified at trial said that they had never seen used restaurant equipment advertised in any trade journal, and that they do not advertise in any such journals. The other dealer testified that he had seen some advertisements for used restaurant equipment in trade journals, but that he did not advertise in such journals.
*891 In an attempt to prove the bank acted unreasonably, Rikki Tikki Tavi presented evidence purporting to show the Bank failed to keep a list of parties inquiring about the collateral, failed to contact any restaurant brokers or dealers concerning the sale, and failed to advertise the sale in any trade journals. The evidence, however, furnishes only the barest inference that dealers in collateral of this type would have done any of those things that Rikki Tikki Tavi accuses the Bank of not doing. In other words, Rikki Tikki Tavi's evidence tending to establish that the Bank's conduct in the foreclosure sale was commercially unreasonable under the circumstances is not sufficient, as against the great weight and preponderance of the evidence to the contrary, to withstand the motion for new trial.
The only evidence presented which tends to establish that it may have been commercially reasonable to have advertised in trade journals is one dealer's statement that he had seen some advertisements in trade journals for items of this kind. However, other dealers said they had not seen such advertisements, and all the dealers said that they did not advertise in such journals. The allegation that the Bank failed to contact restaurant equipment dealers is simply not supported by the evidence, because the evidence shows that at least three dealers were contacted. There is no testimony establishing that dealers usually keep lists of potential buyers that contact them.
After indulging all presumptions in favor of the verdict's validity, and in light of the near total absence of testimony tending to establish that the Bank's conduct in the sale was commercially unreasonable, we find that the overwhelming weight of the testimony establishes that the Bank did act in a commercially reasonable manner, and, therefore, that the motion for new trial should have been granted. See First Alabama Bank of Montgomery v. Parsons, 426 So.2d 416 (Ala.1982). The order denying a new trial is reversed and the cause remanded for a new trial on the debtor's counterclaim.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES, and BEATTY, JJ., concur.
ADAMS, J., concurs specially.
FAULKNER and EMBRY, JJ., dissent.
ALMON, J., not sitting.
ADAMS, Justice (concurring specially).
I concur specially. Although I agree with the dissent that, although weak, there was sufficient evidence to submit the question of commercial reasonableness to the jury, I cannot agree that the debtor should recover on its counterclaim. Recovery is not only premised on the lack of commercial reasonableness, but the same must have proximately caused the debtor's damages.
EMBRY, Justice (dissenting).
After a careful review of the record, I conclude that Rikki Tikki Tavi proffered sufficient evidence to allow the jury to infer that the Bank conducted a commercially unreasonable sale, and that such unreasonableness caused Rikki Tikki Tavi financial loss. For example, Rikki Tikki Tavi introduced the testimony of two experts who appraised the collateral at the time of the sale. Their estimates were $175,000 to $220,000 and $150,000 to $160,000 respectively. Although the Bank refuted this testimony through its own experts, who appraised the collateral at approximately $55,000 (the sale price), such conflict in the evidence regarding the true market value of the collateral is clearly a question for the jury. First National Bank of Bellevue, 188 Neb. at 365, 196 N.W.2d at 510 (1972); Wells v. Central Bank, 347 So.2d 114 (Ala.Civ.App.1977). Additionally, where a large discrepancy exists between the sale price and the reputed market value, as is the case here, such discrepancy is relevant to the issue of causation. First Alabama Bank of Montgomery v. Parsons, 426 So.2d at 422 (Ala.1983).
*892 In an effort to prove other commercially unreasonable aspects of the disposition sale, Rikki Tikki Tavi presented evidence proving that the Bank: Failed to keep a list of parties inquiring about the collateral; failed to contact any restaurant brokers or dealers concerning the sale; and failed to advertise the sale in any trade journals. Once again, whether these failures amounted to commercially unreasonable behavior is a question for the jury. Wells v. Central Bank, 347 So.2d 114 (Ala.Civ.App. 1977). See also ITT-Industrial Credit Co. v. Milo Concrete Co., Inc., 31 N.C.App. 450, 229 S.E.2d 814 (1976).
It is well settled that jury verdicts are presumed correct and this presumption is strengthened when, as in the present case, the trial court has denied a motion for a new trial. Finance Inv. & Rediscount Co. v. Wells, 409 So.2d 1341, 1343 (Ala.1981); Harrison v. Mitchell, 391 So.2d 1038 (Ala. Civ.App.1980). I would hold the evidence presented by Rikki Tikki Tavi was sufficient to justify the jury in finding commercial unreasonableness as well as causation, and would therefore affirm the judgment of the trial court.
FAULKNER, J., concurs.