William A. Stone appeals from a judgment in favor of Cloverleaf Lincoln-Mercury, Inc. ("Cloverleaf"), and Ford Motor Credit Company ("FMCC"). We affirm.
Cloverleaf and FMCC sued Stone on May 22, 1985, to recover a deficiency claimed after the voluntary repossession and resale of Stone's 1984 Lincoln Mark VII automobile, which had been sold to him by Cloverleaf and financed by FMCC.
Following a nonjury trial, the judge entered a judgment against Stone in the amount of $17,200.00.
Stone purchased the automobile from Cloverleaf on August 27, 1984. He entered into a retail installment sales contract with Cloverleaf in which the dealer agreed to finance the balance of the purchase price, after a trade in, of $27,148.60. The contract provided for 60 consecutive monthly payments in the amount of $663. 12, beginning on October 11, 1984. Cloverleaf took a purchase money security interest in the automobile; it then assigned the contract and security interest to FMCC and guaranteed partial payment in the event of default by Stone.
After making four payments, Stone defaulted in February 1985. On April 22, 1985, he contacted FMCC, and, with his consent, FMCC repossessed the car that same day.
Subsequent to the voluntary repossession, FMCC sent Stone, by certified mail, a written notice dated April 22. The notice confirmed the voluntary repossession and informed Stone that the automobile could be redeemed within ten days by payment of the amount due set out in the notice. Failure *Page 390 
to redeem, according to the notice, would result in a private sale at any date after the expiration of the ten-day redemption period.
The notice was mailed to Stone's address shown on the installment sales contract. The postal service, on April 23, 1985, May 2, 1985, and May 8, 1985, left Stone notices that it was holding certified mail for him. Stone never picked up the letter. On May 9, 1985, the letter was returned to FMCC marked "unclaimed" and "postage due $.20."
FMCC sold the car on May 8, 1985, at the Sand Mountain Auto Auction in Boaz, Alabama, for $14,370.00. After application of the sale proceeds to the balance owing by Stone, FMCC computed an $11,874.96 deficiency. In addition, Cloverleaf, pursuant to its partial guaranty agreement, claimed that Stone owed it $3,315.80, the amount that it had paid FMCC.
At trial, the court, sitting without a jury, heard ore tenus evidence and awarded Cloverleaf and FMCC a judgment in the amount of $17,200.00, which reflected the claimed deficiency and attorney fees.
On appeal, Stone first argues that the notice of sale was deficient because the notice sent by certified mail did not have sufficient postage. Although not expressly stating so, Stone apparently contends that this alleged error would preclude FMCC and Cloverleaf from recovering their deficiency.
Stone admitted his default, but alleged at trial that the sale was conducted without notice and was not accomplished in a commercially reasonable manner. He filed no counterclaim for damages arising out of any purported lack of notice or out of the unreasonableness of the sale.
Neither insufficient notice of sale nor commercially unreasonable behavior by a secured creditor in accomplishing a sale constitutes an absolute bar to recovery of a deficiency. Rather, if either is accompanied by the secured creditor's bad faith in disposing of the collateral, and the conduct causes the debtor to suffer a loss, then the debtor is entitled to set off the loss against the total deficiency. First National Bankof Dothan v. Rikki Tikki Tavi, Inc., 445 So.2d 889, 890 (Ala. 1984); First Alabama Bank of Montgomery v. Parsons,426 So.2d 416, 418-19, 421-22 (Ala. 1982); Valley Mining Corp. v. MetroBank, 383 So.2d 158, 163-65 (Ala. 1980).
In the trial court, Stone claimed no loss as a result of the alleged defect in the notification of sale. Even assuming, arguendo, that no notice, or that insufficient notice, was given, such a defect would not provide Stone with an absolute defense to the deficiency. At best, he would be entitled only to recover damages in the nature of a set off against the total deficiency.
Having established what Stone may have had resulting from a defective notice, we must determine whether the notice was in fact deficient. We determine that it was not.
Section 7-9-504(3), Code of Alabama (1975), requires that a secured party give notice to a defaulting party prior to disposing of collateral. Failure to transmit notice, or transmission of insufficient notice, is in and of itself commercially unreasonable behavior. Parsons, supra, 426 So.2d at 418.
In the instant case, even though FMCC's notice was mailed with insufficient postage, the postal service attempted delivery to Stone on three separate occasions. Notices of the certified letter were left at Stone's address on April 23, May 2 and May 8, 1985 (although it does appear that if Stone had claimed the notice on May 8, that would have been too late). The fact that he did not receive the notice was not due to the lack of postage, but rather was due to his own acts of omission.
Section 7-9-504(3), supra, requires, in pertinent part, that "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." This Court, inLow Cost Cars, Inc. v. Munn, 399 So.2d 277 (Ala. 1981), stated that "[t]he requirement that reasonable notice be sent to *Page 391 
the debtor . . . does not require that the debtor receive it." The proper test for the sufficiency of notice is whether the notice would protect the debtor's interest in the property.Parsons, supra, 426 So.2d at 418. The record contains no evidence that the certified mail was not delivered due to insufficient postage, or that FMCC's failure to affix an additional $.20 in postage was commercially unreasonable under the facts of this case.
Stone next argues that the trial court erred to reversal in denying him the opportunity to prove that FMCC sold the Mark VII for too low a price. Stone called a used car dealer to testify at trial, and the following exchange occurred:
 "Q. This particular vehicle — was there a problem with the vehicle?
 "A. The car when it came out in '84 was a radical change from the '83 model. The '83 was more provisional like the towncar. When it first came out the car didn't sell very well. It was cold. We only stocked one at a time. In order to get the car on the market Ford Motor Credit put their employees in these cars and drove them in the field in large numbers.
 "Q. Do you know how long they drove these vehicles?
"A. Into the '84 year model [sic].
 "Q. The Court: What is this offered to show, Mr. Belser?
 "Mr. Belser: Offered to show that Ford Motor Credit paid the market price for these vehicles and therefore reduced the price of it.
 "The Court: That is impertinent. Go on to something pertinent.
"Mr. Belser: No further questions."
Stone contends that the evidence proffered would be relevant as to the commercial reasonableness of the sale of the automobile, because, he says, it would tend to show that FMCC sold it at too low a price. Stone, however, did not preserve this issue for review, because he failed to object to the trial court's instruction to Mr. Belser to "go on."
In order to preserve an issue for appeal, an aggrieved party must secure a ruling from the trial court and must interpose a timely objection. Boykin v. First Alabama Bank of Birmingham,384 So.2d 10, 12 (Ala. 1980). In Boykin, we stated:
 "Although formal exceptions to adverse rulings and to objectionable orders by the trial court are no longer required under our procedural rules, ARCP 46 provides:
 " '. . . for all purposes for which an exception has heretofore been necessary it is insufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor.'
 "If no objection was made at trial, the party who now attempts to oppose the trial court's ruling or order has nothing about which he may complaint on appeal."
Because Stone made no objection to the instruction at trial, the propriety of it is not before this Court for its review.
There appearing no error, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.