Linda Gayle Underwood appeals from a summary judgment in favor of the Coffee County Bank, an Alabama corporation (Bank), in an action by the Bank to recover on a promissory note, and from a summary judgment in favor of the Bank on a counterclaim asserted by Underwood.
The Bank's complaint alleged that during June 1989, Underwood and Dan Thomas executed a promissory note payable to the Bank, in the principal sum of $6,204.78, with interest thereon at 16.998%. The note was secured by a purchase money security interest in a 1984 Buick automobile. The note provided that in the event of default, the Bank would be entitled to possession of the collateral and attorney fees of 15% of the unpaid debt. The complaint further alleged default, repossession, and the sale of the collateral at public or private sale, and alleged that after applying all credits and setoffs and adding the expenses of repossession, there remained a principal balance due of $4,062.10, plus $1,105.68 in accrued interest and $609.32 in attorney fees, together with pre-judgment interest at the rate specified above, and costs of court.
The record discloses service of process on Thomas by certified mail on August 30, 1991. A default judgment was subsequently entered *Page 12 
against him. Thomas did not appeal and is not a party to this action.
Service of process was attempted on Underwood by certified mail in October 1991, at an address in Texas; however, the return was marked "unclaimed." Thereafter, service was apparently accepted by Underwood's attorney in March 1992, and in April 1992, her attorney filed a motion to dismiss, contending that the complaint failed to state a cause of action and that Underwood had not had "due legal and required notice of sale so she could protect her interest in the matter." Thereafter, Underwood amended her motion to dismiss, alleging that the sale was illegal and void in that it deprived her of due process; that it was unconstitutional in that it deprived her of her property; and that the complaint was deficient in that it did not specify what type of sale, if any, was had, or the price for which the vehicle was ultimately sold. In addition, she filed a counterclaim against the Bank, contending that the Bank had previously illegally sold her a 1981 Pontiac in an unrelated transaction and had failed to provide her with a title certificate, without which she could not legally transfer the title thereto, all of which caused her "great mental anguish, harassment, loss of money, and embarrassment." She sought damages in the sum of $25,000 and costs. The Bank answered with a general denial.
In November 1992, the Bank filed a motion for summary judgment, together with a supporting affidavit and documents from the Bank's collection manager, regarding both its claim against Underwood and Underwood's counterclaim. The affidavit, in pertinent part, stated:
 "I am Zan McMahan. I am the collection manager for the [Bank]. I am one of the custodians of the records of the [Bank]. In said capacity, I am familiar with the account of [Underwood], and the records pertaining thereto.
 "On or about June 17, 1989, the Defendants, [Underwood] and Dan Thomas, executed a promissory note payable to the order of the [Bank], a copy of which has been attached to [the Bank's] complaint.
 "Thereafter default occurred in the payment of the promissory note. The collateral/security on the note, to-wit: 1984 Buick LeSabre VIN: 1G4AP69Y7EH901415 was repossessed by [the Bank] in Fort Worth, Texas. As provided for by the provisions of the Alabama Commercial Code, notice of private sale of the collateral and right to redeem was mailed to [Underwood], by certified mail at 4605 Harwin Terrace, Fort Worth, Texas 76133[;] said notice was returned unclaimed. The automobile had been recovered/repossessed by American Lenders Service Company on behalf of [the Bank] at said address.
 "The 1984 Buick LeSabre was sold and a deficiency balance existed. After adding expenses of repossession and sale the following sums are due from [Underwood]:
"$4,062.10 Principal
"2,137.30 Interest
 "and attorney's fees of $609.32 and costs of court.
 "[Underwood], in her counterclaim, alleges that the '[Bank] illegally sold [Underwood] one 1981 Pontiac without ever issuing her the legally required title.'
 "The [Bank] had financed certain vehicles of Thomley Motors under the provisions of a 'floor plan' agreement. Thomley sold the vehicle 'out of trust' directly to [Underwood] and sought to retain a first lien on the vehicle.
 "[Underwood's] counterclaim has reference to a 1981 Pontiac Phoenix . . . sold by Thomley Motors, Incorporated, to [Underwood] on January 5, 1989. . . . The vehicle was apparently financed by Thomley Motors as the application for title shows Thomley as first lienholder.
 "The [Bank] has never sold or financed the subject 1981 Pontiac Phoenix to [Underwood]. The only involvement the [Bank] has ever claimed in and to said automobile arose out of an assignment by law of the accounts receivable of Thomley Motors upon default by Thomley Motors on the floor plan agreement.
 "The [Bank] has never defaulted a loan on the 1981 Pontiac or sought to enforce any lien against said automobile. Any defect *Page 13 
in title was the sole proximate fault of Thomley Motors and not the [Bank]."
Underwood responded to the Bank's motion by filing her affidavit wherein she asserted that she had telephoned Hal Kirkland at the Bank in April 1990, and had told him to pick up the Buick automobile. She stated that when she attempted to discuss any charges against the loan with Kirkland, he indicated that there was nothing for her to be concerned about and that he only wanted the vehicle. She said she gave him her mother's address at 4605 Harmon Terrace, Ft. Worth, Texas. She said she asked if the car would be returned to Alabama, because the cosigner wanted to try to resell it or to assume payments on it to save his credit, and she said Kirkland answered affirmatively. She stated that her parents moved in July 1991, and that they never received any mail for her. Underwood claimed that after the car was surrendered, she returned to Alabama and telephoned the Bank numerous times, attempting to discuss the matter with Kirkland, because, "I knew that there was a possibility of repercussions."
Underwood further asserted in her affidavit that in August 1991, Thomas informed her that he had received a letter from the Bank about going to court regarding the vehicle. She said she told him that she would try again "to find out what was going on." She stated that she talked to a Mr. Watson at length, and that approximately four days later, she telephoned Watson back and was informed of the deficiency. She stated that neither she nor Thomas was notified "when or how the car was disposed of, how much was left owing on the car, or who bought the car."
Thomas stated that he had gone to the Bank to inform its employees that he would assume the payments on the car if they would bring it back from Texas. He stated that the Bank employees told him he could not have the car because his name was not on the title, although he had cosigned the loan. He said he never heard when or where the Bank disposed of the car, nor how much was left owing on the note. He said, "I finally received a letter in July of 91 about the car. The letter was all I heard from them in over a year."
Underwood admits her default and the voluntary surrender of possession of the automobile. She filed no counterclaim for damages arising out of any purported lack of notice or unreasonableness of the sale. Her counterclaim merely raises an issue regarding an unrelated transaction.
McMahan's affidavit states that, subsequent to the repossession, the Bank sent a written notice dated May 15, 1990, to Underwood by certified mail to 4605 Harwin Terrace, Ft. Worth, TX, 76133. He said the notice informed Underwood that the automobile could be redeemed before June 1, 1990, by paying the amount due as set out in the notice. That notice was returned "unclaimed," and Underwood did not deny the Bank's assertion.
Thereafter, the trial court entered a summary judgment in favor of the Bank and against Underwood on its claim of a deficiency in the amount $6,808.72, plus costs of court, and it entered a summary judgment against Underwood as to her counterclaim against the Bank; hence, this appeal.
Underwood argues that the summary judgment was improperly granted, because, she says, she was not properly notified of the sale of the vehicle and the Bank had failed to deliver her a certificate of title to the Pontiac.
Summary judgment is proper if there was no genuine issue of material fact and the Bank was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. When a motion for summary judgment is made and supported, as provided in the rule, a party adverse to the motion "may not rest upon the mere allegations or denials of his pleading," but must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), A.R.Civ.P. Proof by substantial evidence is the test. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). The reviewing appellate court must apply the same standard applied by the trial court when reviewing an entry of summary judgment. Melton v. Perry County Board of *Page 14 Education, 562 So.2d 1341 (Ala.Civ.App. 1990).
Apparently, Underwood contends that because the sale was conducted without notice to her, it was not accomplished in a commercially reasonable manner, and, therefore, that the Bank should be barred from obtaining a deficiency judgment. She appears to assert that because notice was mailed to "Harwin Terrace" instead of "Harmon Terrace" and was returned "unclaimed," the notice was defective and thus commercially unreasonable.
Ala. Code 1975, § 7-9-504(3), requires that a secured party give notice to a defaulting party prior to disposing of collateral. Failure to transmit notice, or transmission of insufficient notice, although commercially unreasonable, does not necessarily preclude good faith in disposing of collateral.First Alabama Bank of Montgomery, N.A. v. Parsons,426 So.2d 416 (Ala. 1982). Nevertheless, neither insufficient notice of sale nor commercially unreasonable behavior by a secured creditor in accomplishing a sale constitutes an absolute bar to recovery of a deficiency. "Rather, if either is accompanied by the secured creditor's bad faith in disposing of the collateral, and the conduct causes the debtor to suffer a loss, then the debtor is entitled to set off the loss against the total deficiency." Stone v. Cloverleaf Lincoln-Mercury, Inc.,546 So.2d 388, 390 (Ala. 1989).
In the case sub judice, Underwood claimed no loss as a result of the alleged defect in the notification of the sale. Even assuming that no notice, or insufficient notice, was given, such a defect is not an absolute defense to the deficiency. At most, she would be entitled only to recover damages in the nature of a set off against the total deficiency. Therefore, we must determine whether the notice was, in fact, deficient.
At the time the loan was consummated, Underwood's address was listed as that of the cosigner, Thomas, namely, "Rt. 4, Box 410, Enterprise, AL 36330." Underwood's affidavit states that in April 1990, apparently after she moved to Texas, Underwood telephoned the Bank and told Kirkland to pick up the automobile, and that she gave him her mother's address, "4605 Harmon Terrace, Ft. Worth, TX." The Bank's notice by certified mail was sent to Underwood at 4605 Harwin Terrace, Fort Worth, Texas 76133, and was returned "unclaimed." This fact is not disputed by Underwood. Our Supreme Court, in Low Cost Cars,Inc. v. Munn, 399 So.2d 277, 280 (Ala. 1981), stated that "[t]he requirement that reasonable notification be sent to the debtor . . . clearly does not require that the debtor receive it." The record contains no evidence to indicate that the certified notice was undelivered because of an insufficient address; accordingly, we cannot find that the attempted notification was unreasonable based upon the facts of this case.
Underwood next argues that the trial court erred in entering the summary judgment against her counterclaim. It is undisputed that Underwood purchased the Pontiac from Thomley Motors, Inc., which apparently agreed to finance it and was the first lienholder. As a result of Thomley's default, certain accounts receivable were assigned to the Bank pursuant to the floor plan agreement with the Bank. When the problem developed whereby Underwood was unable to obtain the certificate of title to the Pontiac, the Bank assisted her. Underwood contends that as a result of being unable to obtain that certificate of title, she was unable to sell the Pontiac, and, as a result, suffered damages.
It is clear from the pleadings and affidavits that Underwood's claim against the Bank regarding the Pontiac as a secured party assignee is derivative of a claim arising from a contract between Underwood and Thomley Motors, Inc. A secured party assignee may not be sued affirmatively for such claims.Lawson State Community College v. First Continental LeasingCorp., 529 So.2d 926 (Ala. 1988). We hold that the trial court correctly entered the summary judgment in favor of the Bank regarding any affirmative claim Underwood may have had regarding her purchase of the Pontiac from Thomley Motors, Inc. *Page 15 
Based upon the foregoing, the trial court correctly entered the summary judgment, and its judgment is hereby affirmed.
AFFIRMED.
YATES, J., concurs in the result.
ROBERTSON, P.J., dissents.