Bibb G. Mims ("Mims") appeals from the judgment of the trial court declaring that the security interest of First Citizens Bank ("the Bank") was superior to his security interest in two cotton pickers. *Page 1100 
The cotton pickers are referred to throughout this opinion individually as "the 1990 cotton picker" and "the 1991 cotton picker" and collectively as "the collateral." After an ore tenus hearing on March 10, 2004, the transcript of which is not included in the record on appeal,[1] the trial court entered a judgment on March 19, 2004. In its judgment, the trial court made the following relevant findings of fact and conclusions of law:
 "FINDINGS OF FACT
 ". . . .
 "3. In 1996, Terra International, Inc. (`Terra'), made a series of loans to McGill Farming Company, a partnership, and Joe and Brenda Mims, (collectively, the `Debtors'); those loans were secured by real property and personal property of the Debtors, including various pieces of farming equipment, and Terra perfected its interest by recording a security interest in the Probate Court of Monroe County, Alabama, on December 19, 1996, . . . identifying as collateral a 1991 . . . cotton picker. . . .
 "4. In 1998, . . . [the] Bank . . . loaned money to the Debtors, . . . secured by various pieces of farming equipment, and recorded a security interest in the Probate Court of Monroe County, Alabama, on April 16, 1998. . . . That instrument identified as collateral a 1990 and 1991 . . . cotton picker. . . .
 "5. On February 7, 2000, . . . Mims . . . succeeded to the interest of Terra by virtue of an assignment. Mims went into possession of the collateral on the aforementioned date. . . . Mims succeeded to Terra's security interest in the Debtor's collateral, and filed a UCC-1 in the Probate Court of Monroe County, Alabama, on March 13, 2000. . . . That filing identified as collateral . . . [a] 1990 . . . cotton picker . . . and . . . [a] 1991 . . . cotton picker.
 "6. In late 2002, the Debtors defaulted on their promise to repay [the Bank] and [the Bank] initiated procedures to enforce its security interest against the Debtors' collateral. During this process, a dispute arose between [Mims] and [the Bank] as to [those] parties' competing rights in the two cotton pickers identified in [the Bank's] security agreement. The parties, by agreement, consented for [the Bank] to pick up the collateral and dispose of the property at auction. [The Bank] sold the property at auction and retained the proceeds. Thereafter, [Mims] filed the complaint for declaratory judgment regarding the proceeds of the sale.
 "CONCLUSIONS OF LAW
 "Based upon the foregoing findings of fact, the Court finds that Terra's original filing in 1996, by normal operation of law, lapsed after five years — terminating on December 19, 2001. U.C.C. § 9-403(2). . . . [The] Bank recorded a security interest in the Probate Court of Monroe County, Alabama, on April 16, 1998. That instrument identified collateral as a 1990 and 1991 . . . cotton picker. . . . Mims['s] March 13, 2000, filing failed to effectively continue the 1996 Terra filing. . . . The Court finds that . . . Mims perfected a security interest in the cotton pickers through his possession of the collateral on February 7, 2000. While possession of collateral has been and continues to be one acceptable *Page 1101 
method (among several) of perfecting a party's security interest in goods, U.C.C. § 905; perfection by filing remains the default rule and the preferred method of perfection for security interests in goods under Article 9. The Court finds that priority among conflicting security interests in the same collateral is determined according to priority in time of filing for perfection. U.C.C. 9-312(5). The Court finds that the Bank's perfected security interest should prevail since it was filed on April 16, 1998, and [Mims] took possession of the property on February 7, 2000. The Bank's earlier filed security interest takes priority as to the parties' competing perfected security interests."
Mims filed a motion to alter, amend, or vacate the judgment. The trial court denied Mims's postjudgment motion. Mims timely appeals.
 "When ore tenus evidence is presented, a presumption of correctness exists as to the trial court's findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala. 1999); Gaston v. Ames, 514 So.2d 877 (Ala. 1987). . . . Moreover, `[u]nder the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness.' Transamerica
[Commercial Fin. Corp. v. AmSouth Bank], 608 So.2d [375] at 378 [(Ala. 1992)]. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court's judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala. 1996); Marvin's, Inc. v. Robertson, 608 So.2d 391 (Ala. 1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala. 1985); League v. McDonald, 355 So.2d 695
(Ala. 1978). `Questions of law are not subject to the ore tenus standard of review.' Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793
n. 2 (Ala. 2000). A trial court's conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala. 1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (`[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court's judgment carries no presumption of correctness.')."
City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App. 2002).
On appeal, Mims contends that the trial court erred in determining that the Bank's security interest in the collateral was superior to his security interest. Mims maintains that his security interest was perfected by the 1995 and 1996 financing statements[2] that were filed by Terra International, Inc. ("Terra"), Mims's predecessor in interest, before the Bank's 1998 financing statement; Mims insists that Terra's 1995 and 1996 financing statements *Page 1102 
were still in effect when Terra assigned its interest in those statements to him on February 7, 2000. Mims argues that although Terra's 1995 and 1996 financing statements subsequently expired, his security interest remained superior to the Bank's security interest because he had also perfected his security interest by the additional means of taking possession of the collateral on February 7, 2000, and, thus, that there was no "intervening gap" when he did not have a perfected security interest in the collateral.
Mims's desire to have both of Terra's financing statements deemed effective on February 7, 2000, is because Terra's 1995 financing statement listed both the 1990 cotton picker and the 1991 cotton picker as collateral. The 1996 financing statement, as noted by the trial court in its judgment, listed the 1991 cotton picker as collateral. It did not mention the 1990 cotton picker. However, as previously stated, the record on appeal does not include a copy of the transcript of the trial. Therefore, we do not know the reason why the trial court, in its judgment, referenced only Terra's 1996 financing statement and not Terra's 1995 financing statement. Without a record to dispute the trial court's finding as to this matter, we must presume that the trial court heard evidence that would have been necessary to support its finding. "`Furthermore, when a trial court's order is based on evidence that is not before the appellate court, we conclusively presume that the court's judgment is supported by the evidence.'" Leeth v. Jim Walter Homes, Inc., 789 So.2d 243,247 (Ala.Civ.App. 2000) (quoting Newman v. State,623 So.2d 1171, 1172 (Ala.Civ.App. 1993) (citing Mitchell v. Mitchell,506 So.2d 1009 (Ala.Civ.App. 1987))). It is well settled that an appellant has the burden of presenting a record containing sufficient evidence to show error by the trial court. Leeth v.Jim Walter Homes, Inc., 789 So.2d. at 246. "`This court cannot assume error, nor can it presume the existence of facts to which the record is silent. The appellant has the burden of ensuring that the record contains sufficient evidence to warrant reversal.'" Leeth v. Jim Walter Homes, Inc., 789 So.2d. at 247 (quoting Newman v. State, 623 So.2d at 1172 (citation omitted)).
Absent a transcript of the proceedings at trial, this court has no way of determining whether the trial court erred as to this matter. Mims's failure to provide this court with a transcript of the trial requires this court to presume that the trial court acted correctly in referencing, in its judgment, only Terra's 1996 financing statement and not Terra's 1995 financing statement. Leeth, supra.
Additionally, other than a summary statement that both Terra's 1995 and 1996 financing statements were effective for five years from the dates of filing,[3] Mims does not address any possible legal effect Terra's 1996 financing statement had on its earlier 1995 financing statement. Mims also did not address Terra's failure to list the 1990 cotton picker as collateral on its 1996 financing statement. Because Mims fails to properly develop this matter, we have no alternative but to affirm the judgment of the trial court with regard to this issue. Asam v.Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App. 1996) (stating that "[t]his court will address only those issues *Page 1103 
properly presented and for which supporting authority has been cited"). Accordingly, the trial court's judgment is affirmed as to its determination that the Bank's security interest in the 1990 cotton picker was superior to Mims's security interest.
We now turn to Mims's argument that is properly before this court — Mims argues that his security interest is superior to the Bank's security interest with regard to the 1991 cotton picker. Our analysis of this issue is governed by the applicable provisions of Alabama's version of the Uniform Commercial Code (hereinafter "the UCC"). As pointed out by the parties on appeal, there is no Alabama caselaw directly on point regarding this issue. We must interpret and apply various provisions of former Article 9 of the UCC, § 7-9-101 et seq., Ala. Code 1975,[4]
relating to secured transactions.
 "Although article 9 as codified at § 7-9-101 [et seq.,] was repealed by the Legislature in 2001, see Act No. 2001-481, Ala. Acts 2001, and superseded by `Article 9A' (§ 7-9A-101 et seq., [Ala. Code 1975,] `Uniform Commercial Code — Secured Transactions'), the new version did not become effective until January 1, 2002. Section 7-9A-702 expressly provides that `[t]his article does not affect an action, case, or proceeding commenced before January 1, 2002.'"
Morgan v. Farmers Merchants Bank, 856 So.2d 811, 815 (Ala. 2003).
Pursuant to § 7-9A-709(a), Ala. Code 1975, "if the relative priorities of the [conflicting] claims [to collateral] were established before January 1, 2002, former Article 9 determines priority." Thus, the priority of the parties' security interests is governed by former Article 9.
As correctly pointed out by the trial court in its judgment, former § 7-9-312 established the priorities among conflicting security interests in the same collateral. That section provided in pertinent part:
 "(5) . . . [P]riority between conflicting security interests in the same collateral shall be determined according to the following rules:
 "(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection."
The Official Comment to former § 7-9-312 states, in pertinent part:
 "There is a single priority rule based on precedence in the time as of which the competing parties either filed their security interests or perfected their security interests. The form of the claim to priority, i.e., filing or perfection, may shift from time to time, and the rank will be based on the first filing or perfection so long as there is no intervening period without filing or perfection."
Although not directly on point to the issue in this case, the Official Comment contains the following example to illustrate the operation of § 7-9-312:
 "Example 3. A has a temporarily perfected (21 day) security interest, unfiled, in a negotiable document in the debtor's possession under Section 7-9-304(4) or (5). On the fifth day B files and thus perfects a security interest in the same document. On the tenth day A files. A has priority, whether or not he knows of B's interest when he files, because he perfected first and has maintained continuous perfection or filing." *Page 1104 
Other relevant former UCC statutory provisions are §§ 7-9-302, -303, -305, and -403, Ala. Code 1975. For the sake of simplicity, we quote the relevant portions of those statutory provisions in chronological order. Former § 7-9-302 provided, in pertinent part:
 "(1) A financing statement must be filed to perfect all security interests except the following:
 "(a) A security interest in collateral in possession of the secured party under Section 7-9-305.
 ". . . .
 "(2) If a secured party assigns a perfected security interest, no filing under this article is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor."
Former § 7-9-303(2) provided:
 "If a security interest is originally perfected in any way permitted under this article and is subsequently perfected in some other way under this article, without an intermediate period when it is unperfected, the security interest shall be deemed to be perfected continuously for the purposes of this article."
Former § 7-9-305 provided in pertinent part:
 "A security interest in . . . goods . . . may be perfected by the secured party's taking possession of the collateral. . . . A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this article.[5] The security interest may be otherwise perfected as provided in this article before or after the period of possession by the secured party."
Former § 7-9-403 provided, in pertinent part:
 "(2) . . . [A] filed financing statement is effective for a period of five years from the date of filing. . . . The effectiveness of a filed financing statement lapses on the expiration of the effective period unless a continuation statement is filed prior to the lapse. . . . Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.
 "(3) A continuation statement may be filed by the secured party within six months prior to the expiration of the effective period specified in subsection (2). Any such continuation statement must be signed by the secured party, identify the original statement by file number and state that the original statement is still effective, and, may . . . specify the maturity date. . . . Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for five years after the last date to which the filing was effective. . . ." *Page 1105 
In Blue Cross Blue Shield of Alabama, Inc. v. Nielsen,714 So.2d 293 (Ala. 1998), our supreme court stated:
 "`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"
714 So.2d at 296 (quoting IMED Corp. v. Systems Eng'g Assocs.Corp., 602 So.2d 344, 346 (Ala. 1992)).
In the present case, the trial court found that Mims perfected his security interest in the collateral on February 7, 2000, by taking possession of the collateral on that date. See former § 7-9-302(1). However, although the trial court also found that Mims had succeeded to Terra's interest in Terra's 1996 financing statement by virtue of the February 7, 2000, assignment of that financing statement, the trial court failed to fully consider the effect of Mims's continued perfected security interest in the 1991 cotton picker as a result of that assignment. See former § 7-9-302(2). Terra's 1996 financing statement was still in effect when it was assigned to Mims on February 7, 2000, and it did not expire until December 19, 2001. See former § 7-9-403(2). Although the trial court found that Mims's March 13, 2000, financing statement was a new filing and did not continue Terra's 1996 financing statement, that finding is not determinative of the priority of the competing security interests under the facts of this case. Because Mims had a perfected security interest in the 1991 cotton picker by the additional means of taking possession of the 1991 cotton picker on February 7, 2000, there was never an "intervening gap" in which his perfected security interest was unperfected. See former § 7-9-303(2). Thus, Mims's security interest in the 1991 cotton picker remained superior to the Bank's security interest in that property. To hold otherwise would be to ignore the plain language of the above-discussed statutes. Accordingly, the trial court's judgment is reversed with regard to its finding that the Bank's security interest in the 1991 cotton picker was superior to Mims's security interest, and the cause is remanded for the trial court to enter a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and BRYAN, J., concur.
MURDOCK, J., concurs specially, with writing.
PITTMAN, J., concurs in the result, without writing.
[1] Mims designated on his notice-of-appeal form that he did not want a transcript of the March 10, 2004, hearing included in the record on appeal. However, the record on appeal includes the documentary evidence admitted into evidence at that hearing.
[2] Mims points out in his brief to this court that the trial court failed to mention in its judgment a financing statement filed by Terra in 1995 in the Monroe County Probate Court. That financing statement identified Terra's security interest in both the 1990 cotton picker and the 1991 cotton picker. Terra's 1995 financing statement was admitted into evidence at the trial and is included in the record on appeal. Mims claims that both Terra's 1995 and 1996 financing statements were effective on February 7, 2000, the date on which those financing statements were assigned to him and on which he took possession of the collateral.
[3] Mims cites former § 7-9-403(2), Ala. Code 1975; that section provided in pertinent part that "a filed financing statement is effective for a period of five years from the date of filing." Article 9 as codified at § 7-9-101 et seq., Ala. Code 1975, was repealed by the Legislature in 2001, see Act No. 2001-481, Ala. Acts 2001, and was superseded by Article 9A, § 7-9A-101 et seq., Ala. Code 1975.
[4] See note 3, supra.
[5] The Official Comment to former § 7-9-305 explains the meaning of the phrase "without relation back":
 "The third sentence of the section rejects the `equitable pledge' theory of relation back, under which the taking possession was deemed to relate back to the date of the original security agreement. . . . This section now brings state law into conformity with the overriding federal policy; where a pledge transaction is contemplated, perfection dates only from the time possession is taken, although a security interest may attach, unperfected, before that under the rules stated in [former] Section 7-9-204, [relating to after-acquired property and future advances under a security agreement]."