[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 533 
Napoleon Folks and Brooksie Folks appeal from a judgment of the Tuscaloosa Circuit Court holding that the Folkses had breached their loan agreement with Tuscaloosa County Credit Union ("TCCU") and determining that the Folkses owed TCCU $18,890.69.[1] We affirm.
The trial court determined that TCCU had a valid security interest in an automobile owned by the Folkses but that, after the Folkses had defaulted on the loan agreement and TCCU had repossessed the or automobile, TCCU had conducted the sale so of the automobile in a commercially unreasonable manner in violation of § 7-9A-610, Ala. Code 1975. Therefore, pursuant to lo; Napoleon Folks's uncontradicted testimony establishing that the value of the automobile at the time of the sale was $12,500, M the trial court; awarded the Folkses a setoff in the amount of $12,500 against the pr deficiency owed to TCCU. Neither the of Folkses nor TCCU challenge the trial court's determinations that the value of the w; automobile at the time of the repossession sale was $12,500 or that the repossession sale was not conducted in a commercially reasonable manner.
 Factual Background
Beginning in March 2003, the Folkses entered into four transactions with TCCU that form the basis of this dispute. Those transactions are summarized as follows:
Transaction 1: On March 24, 2003, the Folkses entered into a loan agreement entitled "Open-End Voucher and Security Agreement" to borrow $26,620.93 from TCCU. This agreement specified a 1999 Lexus LS 400 automobile ("the Lexus") as the collateral to secure the loan; the make, a model, year, and vehicle-identification number of the automobile were noted in the agreement. Pursuant to the terms of the agreement, a finance charge of 5.75% was to apply as an annual percentage rate ("APR") on the principle balance of the loan, and the Folkses were to make 60 monthly payments of $512 to pay off the loan.
Transaction 2: On June 3, 2003, the original March 2003 loan was refinanced solely in Brooksie Folks's name. The new agreement was again entitled "Open-End, Voucher and Security Agreement," and the loan was assigned a new account number. The new agreement expressly noted that it represented a refinance of the original, March 2003 loan. Under the new agreement, Brooksie Folks promised to repay a principal balance of $26,414.88 at an APR of 5.75% in monthly installments of $508 until the amount of the loan, plus interest, was paid in full. The Folkses' Lexus was again identified as the secured collateral for the loan; again, the make, model, year, *Page 534 
and vehicle-identification number of the automobile were noted in the agreement.
Transaction 3: On September 12, 2003, Brooksie Folks signed an agreement with TCCU entitled "Subsequent Action," purporting to amend the terms of the June 2003 agreement by changing the principal balance owed to $25,814.34. According to the amendment, all other aspects of the June 2003 loan were to remain the same. The amended agreement stated that the reason for the amendment to the June 2003 agreement was to allow for "[repair] work being done on [automobile]," and a "99 Lexus" was listed as the collateral for the amended agreement.
Transaction 4: The final transaction at issue in this case took place on February 2, 2004, when Brooksie Folks entered into another agreement with TCCU, entitled an "Open-End Voucher," in which an additional $400 was loaned to Brooksie Folks and added to the principal balance owed at that time under the loan agreement for the June 2003 loan. No other terms of the previous agreements were changed by this agreement. Although this agreement did not specifically refer to the Folkses' Lexus as the secured collateral for the loan at issue, the notation "1999 Lexus" was contained in the agreement.
The uncontradicted testimony at trial revealed that the Folkses fell behind in their payments to TCCU and that TCCU eventually repossessed the Lexus. On August 11, 2005, TCCU sued the Folkses to collect the deficiency owed on the loan agreements. The Folkses answered and counterclaimed, asserting that they were not liable for any deficiency and that they were due to be compensated for, among other things, wrongful conversion and breach of contract. After filing its complaint, TCCU initiated disposition proceedings, and on August 20, 2006, it sold the Folkses' Lexus for $1,000 to Jon Mills, the son of a TCCU director. TCCU then applied the $1,000 proceeds from the sale of the Lexus to the Folkses' deficiency, resulting in a net deficiency of $28,333.
On January 29, 2007, after a trial on the merits, the Tuscaloosa Circuit Court held that TCCU had a valid security interest in the Lexus, as the secured collateral for the loan agreements between the Folkses and TCCU, and that the balance remaining on the loan was $28,333. However, the court found that the sale of the Lexus was not conducted in a commercially reasonable manner and that the Folkses were entitled to a credit against the secured debt. The court found that, at the time of disposition, the Lexus was worth approximately $12,500. Therefore, the court entered a deficiency judgment in a favor of TCCU and held that, after the credit of $12,500, the Folkses owed a deficiency balance of $18,890.69, which represented the remaining balance on the secured debt plus interest and attorney fees.
The Folkses timely appealed to the Alabama Supreme Court, and the appeal was transferred to this court pursuant to § 12-2-7(6), Ala. Code 1975. The Folkses raise three issues on appeal: (1) whether TCCU was entitled to a deficiency judgment; (2) whether the trial court, after finding that the sale of the Lexus was not conducted in a commercially reasonable manner, erred by failing to award damages to the Folkses pursuant to § 7-9A-625, Ala. Code 1975; and (3) whether the trial court erred by finding that TCCU had a valid and enforceable security interest in the Lexus at the time the automobile was repossessed.
 Standard of Review "`When ore tenus evidence is presented, a presumption of correctness exists as to the trial court's findings on issues of fact; its judgment based on these findings of fact will not be disturbed *Page 535 
unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala. 1999); Gaston v. Ames, 514 So.2d 877 (Ala. 1987). . . . Moreover, "[u]nder the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness." Trans-america [Commercial Fin. Corp. v. Am-South Bank], 608 So.2d [375] at 378 (Ala. 1992)]. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court's judgment. . . . "Questions of law are not subject to the ore tenus standard of review." Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala. 2000). A trial court's conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cask 624 So.2d 576, 577 (Ala. 1993). This court reviews the application of law to facts de novo. Allstate [Ins. Co. v. Skelton], 675 So.2d [377,] 379 [(Ala. 1996)] ("[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court's judgment carries no presumption of correctness.").'"
Mims v. First Citizens Bank, 913 So.2d 1098, 1101
(Ala.Civ.App. 2005) (quoting City of Prattville v.Post, 831 So.2d 622, 627-28 (Ala.Civ.App. 2002)). The issues raided on appeal are governed by § 7-9A-101 et seq., Ala. Code 1975, a part of Alabama's version of the Uniform Commercial Code ("the UCC"), which applies to secured transactions.
 I.
Before the enactment of revised Article 9A, Title 7, Ala. Code 1975, which became effective in Alabama in 2002, Alabama decisions applied a setoff approach to deficiency judgments in both consumer and nonconsumer transactions. See Stone v.Cloverleaf Lincoln-Mercury, Inc., 546 So.2d 388 (Ala. 1989) (applying the setoff approach to the disposition of a consumer use automobile); Underwood v. Coffee CountyBank, 668 So.2d 10 (Ala.Civ.App. 1994) (same); andFirst Nat'l Bank of Dothan v. Rikki Tikki Tavi, Inc.,445 So.2d 889, 890 (Ala. 1984) (applying the setoff approach to the disposition of commercial-use restaurant equipment). Under the setoff approach, a secured party's failure to have conducted a sale or disposition of collateral in a commercially reasonable manner does not absolutely bar the secured party from recovering the deficiency between the amount due on the secured debt and the proceeds of the sale or disposition of the collateral. Rather, the debtor is entitled to set off any loss proven at trial against the deficiency owed to a secured party.See Stone, 546 So.2d at 390.
Under revised Article 9A, the Alabama legislature adopted a rebuttable-presumption approach to deficiency judgments only in nonconsumer transactions. See § 7-9A-626(a)(4), Ala. Code 1975. According to the rebuttable-presumption approach, if a secured party does not conduct a sale or disposition of collateral in a commercially reasonable manner, the value of the collateral is presumed to be equivalent to the debtor's deficiency unless the secured party proves otherwise. § 7-9A-626(a)(4), Ala. Code 1975.
Section 7-9A-626, Ala. Code 1975, provides, in pertinent part:
 "(a) Applicable rules if amount of deficiency or surplus in issue. In an action arising from a transaction, other than a consumer transaction, in which the amount of a deficiency or surplus is in issue, the following rules apply: *Page 536 
 ". . . .
 "(3) Except as otherwise provided in Section 7-9A-628, if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:
 "(A) the proceeds of the collection, enforcement, disposition, or acceptance; or
 "(B) the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance.
 "(4) For purposes of paragraph (3)(B), the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees unless the secured party proves that the amount is less than that sum.
 . . . .
 "(b) Non-consumer transactions; no inference.
The limitation of the rules in subsection (a) to transactions other than consumer transactions is intended to leave to the court the determination of the proper rules in consumer transactions. The court may not infer from that limitation the nature of the proper rule in consumer transactions and may continue to apply established approaches."
(Emphasis added.) The Official Comment to § 7-9A-626
explains:
 "Courts construing former [UCC] Section 9-507 [former § 7-9-507 in Alabama's version of the UCC] disagreed about the consequences of a secured party's failure to comply with the requirements of former Part 5. Three general approaches emerged. Some courts have held that a noncomplying secured party may not recover a deficiency (the `absolute bar' rule). A few courts held that the debtor can offset against a claim to a deficiency all damages recoverable under former Section 9-507 resulting from the secured party's noncompliance (the `offset' rule). A plurality of courts considering the issue held that the noncomplying secured party is barred from recovering a deficiency unless it overcomes a rebuttable presumption that compliance with former Part 5 would have yielded an amount sufficient to satisfy the secured debt. In addition to the nonuniformity resulting from court decisions, some States enacted special rules governing the availability of deficiencies."
The Folkses recognize that Alabama courts have previously applied the setoff approach to deficiency judgments, and they acknowledge that § 7-9A-626(a)(4) adopts the rebuttable-presumption approach only in nonconsumer cases. Nevertheless, the Folkses assert that § 7-9A-626(a)(4) supplants Alabama decisions applying the setoff approach to deficiency judgments. The Folkses contend that pursuant to § 7-9A-626(a)(4), either the rebuttable-presumption approach or the absolute-bar rule applies to deficiency judgments in consumer transactions.
Although there are a number of policy considerations and rationales that might be advanced either for adopting the rebuttable-presumption approach to deficiency judgments or for maintaining Alabama's current setoff approach, we do not *Page 537 
find it necessary to outline any of those considerations here. When the Alabama legislature revised the Alabama Code provisions regarding secured transactions, the legislature had the opportunity to adopt the rebuttable-presumption approach to deficiency judgments in consumer transactions. Instead, our legislature chose to enact § 7-9A-626, which provides in subsection (b) that the adoption of the rebuttable-presumption approach to deficiency judgments in nonconsumer transactions is "intended to leave to the court the determination of the proper rules in consumer transactions." Subsection (b) further provides that an Alabama court "may not infer from [the application of the rebuttable-presumption approach in nonconsumer transactions] the nature of the proper rule in consumer transactions and may continue to apply establishedapproaches." (Emphasis added.) Because our legislature declined the opportunity to modify the approach to deficiency judgments in consumer transactions established by Alabama caselaw, we hold that it implicitly accepted the use of the setoff approach that had been followed under the former Code provisions. We, therefore, decline to overrule the cases that have applied the setoff approach or to mandate the application of the rebuttable-presumption approach in consumer transactions. Thus, we hold that the trial court did not err when it set off the Folkses' deficiency by the amount that Napoleon Folks testified was the value of the Lexus at the time of the disposition.
 II.
In addition to their assertion that TCCU was not entitled to a deficiency judgment, the Folkses assert that the trial court erred by failing to award them three types of damages to which, they say, they were entitled pursuant to § 7-9A-625, Ala. Code 1975: actual damages; statutory damages; and supplemental statutory damages. Section 7-9A-625, in pertinent part, provides a debtor with the following remedies for a secured party's failure to comply with the statutory requirements for the sale or disposition of secured collateral:
 "(b) Damages for noncompliance. Subject to subsections (c), (d), and (f), a person is liable for damages in the amount of any loss caused by a failure to comply with this article. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.
 "(c) Persons entitled to recover damages; statutory damages in consumer-goods transaction.
Except as otherwise provided in Section 7-9A-628:
 "(1) a person that, at the time of the failure, was a debtor . . . may recover damages under subsection (b) for its loss; and
 "(2) if the collateral is consumer goods, a person that was a debtor . . . at the time a secured party failed to comply with this part may recover for that failure in any event an amount not less than
the credit service charge plus 10 percent of the principal amount of the obligation or the time-price differential plus 10 percent of the cash price.
 ". . . .
 "(e) Statutory damages: Noncompliance with specified provisions. In addition to any damages recoverable under subsection (b), the debtor . . . may recover $500 in each case from a person that:
 ". . . .
 "(5) fails to comply with Section 7-9A-616(b)(1) and whose failure is *Page 538 
part of a pattern, or consistent with a practice, of noncompliance."
(Emphasis added.)
 Actual Damages
Subsection (b) of 7-9A-625 provides that actual damages may be awarded for "any loss caused by a failure to comply with this article." (Emphasis added.) Actual damages are damages "reasonably calculated to put an eligible claimant in the position that it would have occupied had no violation occurred." Official Comment, § 7-9A-625, Ala. Code 1975.
At trial, the Folkses proved that they had incurred a loss equal to the amount that the Lexus could have been sold for if the sale of the Lexus had been conducted in a commercially reasonable manner. Thus, based on its finding that the sale of the Lexus was not conducted in a commercially reasonable manner, the trial court awarded the Folkses actual damages in the form of a credit against the deficiency owed TCCU. As previously indicated, a trial court may properly award the damages incurred by a debtor as a setoff against a deficiency.See Stone, supra. Pursuant to Napoleon Folks's uncontradicted testimony regarding the value of the Lexus, the trial court determined the amount of the Folkses' loss —i.e. their "actual damages" — to be $12,500. Folks's testimony was the only evidence presented to the trial court regarding a specific "loss," and TCCU does not challenge the trial court's determination awarding a $12,500 setoff against the Folkses' deficiency.
The Folkses make a passing reference in their appellate brief to their entitlement to actual damages as a result of TCCU's having committed the intentional tort of conversion. Assuming for the sake of argument that the Folkses proved at trial that TCCU converted the Lexus, they would have been entitled to no more than $12,500 in actual damages for that conversion because "[t]he measure of compensatory damages for conversion, particularly with property that fluctuates in value, is either its fair market value on the date of conversion, or its value at any time subsequent to conversion and before trial, whichever is greater, with interest from the date of the conversion." Brown v. Campbell, 536 So.2d 920, 922
(Ala. 1988). The Official Comment to § 7-9A-625 states, in reference to § 7-9A-625(b), that "to the extent that damages in tort compensate the debtor for the same loss dealt with by this Article, the debtor should be entitled to only one recovery." The Folkses also make a general reference in then-appellate brief to the fact that 7-9A-625(b) provides that actual damages may include the "loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing." However, the Folkses' argument with respect to their having incurred increased costs in obtaining alternative financing does not satisfy Rule 28(A)(10), Ala. R.App. P. See Rogers Willard, Inc. v. Harwood, [Ms. 2060134, September 14, 2007] ___ So.2d ___ (Ala.Civ.App. 2007) (stating that it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument). Moreover, the only testimony at trial regarding a loss resulting from the Folkses' having to obtain alternative financing was Napoleon Folks's general statement indicating that he had had to pay a "higher interest rate" to obtain financing when his credit score dropped after the Lexus was repossessed. Folks neither testified what that higher interest rate was nor submitted any documentary evidence to support his having paid a higher rate. *Page 539 
The trial court's award of actual damages in the amount of a $12,500 setoff against the Folkses' deficiency was supported by the record.
 Minimum Statutory Damages
The Folkses contend that, pursuant to § 7-9A-625(c)(2), they were entitled to minimum statutory damages in an amount of no less than $6,940.71. Although it is unclear how the Folkses arrived at that amount, we need not determine whether it is the correct amount because the Folkses have already been awarded actual damages in an amount greater than the amount that the Folkses assert they are entitled to as minimum statutory damages. The Official Comment to § 7-9A-625 states:
 "Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor . . . in a consumer-goods transaction. It is patterned on former [UCC] Section 9-507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted."
(Emphasis added.) As the Official Comment indicates, the purpose of statutory damages is to provide the debtor with a remedy when there are relatively little or no actual damages. The Folkses acknowledge in their appellate brief that
 "[w]hen a creditor violates Article 9, Part 6 (Default and Enforcement of Security Interest) the consumer is entitled to the greater of the consumer's actual damages or the minimum damages set out in Ala. Code § 7-9A-625(c)(2) (1975)."
(Emphasis added.) Because the trial court awarded the Folkses actual damages in the amount of $12,500, statutory damages in an amount less than $12,500 were not available.
 Supplemental Statutory Damages
The Folkses also assert that the trial court erred in not awarding supplemental statutory damages pursuant to § 7-9A-625(e)(5). Upon a debtor's default, and after disposition of the secured collateral, § 7-9A-616(b)(1) requires a secured party to send notice of a deficiency or surplus to the debtor.
Section 7-9A-625(e)(5) provides that a debtor is entitled to $500 in supplemental damages from a secured party if the secured party does not comply with § 7-9A-616(b)(1). TCCU does not argue on appeal that it complied with § 7-9A-616(b)(1) in sending the Folkses the required notice. Rather, TCCU asserts that supplemental damages were not warranted in this case because § 7-9A-625(e)(5) provides for damages only when the noncompliance is "part of a pattern, or consistent with a practice, of noncompliance."
Although the trial court made no express finding regarding supplemental damages in its judgment, the Folkses presented no evidence indicating that TCCU's failure to send the required notice to the Folkses was part of a pattern or practice of noncompliance by TCCU. Thus, we cannot hold that the trial court erred by not awarding supplemental damages to the Folkses pursuant to § 7-9A-625(e)(5).
 III.
Finally, the Folkses contend that the trial court erred in determining that TCCU had a valid and enforceable security interest that had attached to the Lexus at the time of repossession. For the following reasons, we affirm the trial court's judgment insofar as it held that TCCU had a valid and enforceable security interest in the Lexus. *Page 540 
Section 7-9A-203, Ala. Code 1975, regarding the attachment and enforceability of security interests, provides, in pertinent part:
 "(a) Attachment. A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.
 "(b) Enforceability. Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
 "(1) value has been given;
 "(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
 "(3) one of the following conditions is met:
 "(A) the debtor has authenticated a security agreement that provides a description of the collateral
and, if the security interest covers timber to be cut, a description of the land concerned."
(Emphasis added.) Alabama's version of the UCC requires that the description of the collateral in the security agreement must be sufficient in order to be enforceable. See
§ 7-9A-108, Ala. Code 1975; and Dresser Indus., Inc. v.Dixie Fuels, Inc. (In re Dixie Fuels, Inc.), 48 B.R. 514
(Bankr.N.D.Ala. 1985) (holding that the security agreement must contain a sufficient description of the collateral before a security interest may attach). According to § 7-9A-108(a), "a description of real or personal property is sufficient, whether or not it is specific, if it reasonably identifies what is described." The statute rejects any "supergeneric" descriptions of collateral — such as "`all the debtor's assets'" — that do not reasonably identify the collateral at issue, see § 7-9A-108(c), but the Official Comment to § 7-9A-108 states that a "sufficient" description need only "make possible the identification of the collateral described" and does not have to be exact and detailed.
The first agreement between the parties, entered on March 24, 2003, clearly created a security interest in the Lexus that was valid and enforceable. Pursuant to the terms of that agreement, TCCU extended a loan to the Folkses in return for the Folkses' promise to repay the amount of the loan, plus interest. The agreement also clearly stated that the Folkses' Lexus was to serve as secured collateral for the loan, in the event of default; the agreement not only specifically described the make, model, and year of the automobile, but it also provided a specific vehicle-identification number. See §§ 7-9A-108
and -203(b).
It is also clear that the second agreement, entered on June 3, 2003, between Brooksie Folks and TCCU created a valid and enforceable security interest in the Lexus. Although that agreement created a new account and was solely in Brooksie Folks's name, the terms of the agreement clearly indicated that the new agreement represented a refinancing of the previous loan, and it again included a description of the Lexus as the secured collateral for the refinanced loan, listing the make, model, year, and vehicle-identification number of the automobile.
The Folkses contend on appeal that the third and fourth agreements also represented "refinances" of the loan, but, they assert, those agreements did not include a "sufficient" description of the Lexus. Therefore, the Folkses assert, TCCU did not have a secured interest in the Lexus at the time TCCU took possession of the automobile. *Page 541 
The language of the third and fourth agreements, however, indicates that the Folkses' contention that those agreements represented "refinances" of the original loan is a mischaracterization of the nature of those agreements. The third agreement, which Brooksie Folks signed on September 12, 2003, was entitled "Subsequent Action," as opposed to the second agreement, which was entitled "Open-End Voucher and Security Agreement" and which included language noting that the second agreement was a refinance of the loan represented by the original agreement between the Folkses and TCCU. Furthermore, the third agreement was a contract form containing various subsections to reflect changes to agreements already in existence. The only pertinent subsection of the second agreement affected by the third agreement was entitled "Modification Agreement," and the third agreement amended only the balance owed on the existing loan.
Although the fourth agreement, entered on February 2, 2004, was entitled "Open-End Voucher" — something different from the third agreement — it was similar to the third agreement in that it simply extended an additional $400 to Brooksie Folks and applied that amount to the balance owed on her secured debt. No other terms of the second agreement, i.e., the "refinance," between Brooksie Folks and TCCU were modified by the fourth agreement, and, in addition to stating Brooksie Folks's name and account number and the new balance on her account, the agreement also referred to the 1999 Lexus. Thus, we hold that the third and fourth agreements modified only the balance of the secured debt and did not objectively indicate that TCCU's security interest in the Folkses' Lexus had been modified or extinguished.
There is ample evidence to support the trial court's determination that TCCU had a valid and enforceable security interest in the Folkses' Lexus and that the terms of the agreement creating that security interest were not modified by subsequent amendments. See Yeager v. General MotorsAcceptance Corp., 719 So.2d 210, 213 (Ala. 1998) (quotingJester v. State, 668 So.2d 822, 823-24
(Ala.Civ.App. 1995)).
 Conclusion
Because the record establishes that the trial court's factual determinations were supported by the evidence, and because we hold that the trial court did not err in its legal conclusions, we affirm the judgment of the trial court.
AFFIRMED.
PITTMAN, J., concurs.
THOMPSON, P.J., and BRYAN and MOORE, JJ., concur in the result, without writing.
[1] The court determined that the Folkses owed a deficiency balance on the loan in the amount of $28,333, interest in the amount of $682.74, and attorney fees in the amount of $2,374.95, for a total of $31,390.69. That balance was reduced by a $12,500 credit for the disposition of the Folkses' automobile, which had been listed as collateral for the loan.