Rel: November 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

————————————————

### CL-2025-0052

————————————————

### Independent Bank

v.

### Kimberly Susan Davis and William W. Rylee

### Appeal from Mobile Circuit Court
### (CV-24-900035)

FRIDY, Judge.

Independent Bank ("the Bank") appeals from a judgment the Mobile Circuit Court ("the trial court") entered in favor of William W. Rylee in its action against him and Kimberly Susan Davis. We reverse the judgment and remand the case to the trial court.

Background

This case stems from Davis's purchase of a 2016 Jeep Cherokee sport-utility vehicle ("the Jeep"). On July 12, 2016, while Davis was living with Rylee at 9823 Hollowbrook Avenue in Fairhope, Davis, as the primary obligor, and Rylee, as the secondary obligor, signed a retail-installment sale contract ("the contract") with Chris Myers Automall. The contract financed $38,654.69 of the purchase price of the Jeep and vested Chris Myers Automall with a security interest in the Jeep. The contract listed 9823 Hollowbrook Avenue as the address of both Davis and Rylee. After Davis and Rylee signed the contract, Chris Myers Automall assigned its rights and obligations under the contract to the Bank. The contract required Davis to make monthly installment payments on the amount financed pursuant to the contract.

Within approximately a year after Davis and Rylee signed the contract, Davis moved out of the residence located at 9823 Hollowbrook Avenue. Rylee continued to live at that address, which, he testified, was the address where he had continuously lived during the seventeen years before the trial of this case on November 25, 2024.

2

Davis made the payments required by the contract until sometime in 2018. After she stopped making payments, the Bank sent her a series of letters attempting to collect the unpaid portion of the debt. The Bank listed both Davis's and Rylee's names on the letters, but none of the letters were addressed to 9823 Hollowbrook Avenue. Instead, the Bank sent the letter to three addresses other than 9823 Hollowbrook Avenue, addresses where the Bank had learned that Davis was living during different periods. Rylee testified that he did not receive any of those letters. One of those letters, which was dated December 3, 2019, offered to settle the debt for $11,612, with a deadline of acceptance of January 3, 2020.

When Davis did not respond to any of the collection letters that the Bank had sent her, the Bank, on April 18, 2019, repossessed the Jeep. When the bank repossessed it, the Jeep was located at 9139 Lake View Drive in Fairhope, one of the three addresses where the Bank had sent the collection letters and where Davis was then living. Also on April 18, 2019, the Bank sent a letter listing Davis and Rylee as the addressees and addressed it to 9139 Lake View Drive. That letter notified the recipient of the letter that the Bank had possession of the Jeep and that

it planned to sell the Jeep at a private sale unless the recipient of the letter paid the Bank the following amounts: the principal balance on the contract in the amount of $27,047.51, interest in the amount of $39.57, late fees in the amount of $227.07, miscellaneous fees in the amount of $84.36, and the estimated cost of repossessing, repairing, and storing the Jeep in the amount of $800. The Bank did not send a copy of that letter to 9823 Hollowbrook Avenue.

When the Bank did not receive a response to its April 18, 2019, letter, it sold the Jeep for $15,000. On May 24, 2019, the Bank sent a letter listing Davis and Rylee as the addressees and addressed it to 9139 Lake View Drive. The May 24, 2019, letter stated that, after the sale of the Jeep, the recipient owed a deficiency in the amount of $14,047. The Bank did not send a copy of that letter to 9823 Hollowbrook Avenue.

On January 5, 2024, the Bank sued Davis and Rylee, alleging that they had breached the contract by failing to make all the payments due under the contract and seeking to recover the unpaid principal of the debt plus interest, which totaled $18,992.27; attorney's fees in the amount of $2,477.25; interest accruing after the action was filed; and the costs of the action. On January 18, 2024, Rylee was served personally at 9823

4

Hollowbrook Avenue with the first summons issued by the trial court. Rylee filed some dispositive motions that were denied and then answered the complaint. Davis was served with process but did not file an answer to the complaint or otherwise defend the action. The trial court held a bench trial regarding the merits of the action on November 25, 2024.

Upon the conclusion of the trial, the trial court took the action under submission, and the Bank and Rylee filed posttrial briefs. On December 28, 2024, the trial court entered a judgment in favor of Rylee as to the Bank's claim against him and a default judgment against Davis as to the Bank's claim against her. The trial court did not make any specific findings of fact or explain the rationale for its decision as to Rylee. The Bank timely filed a notice of appeal from the judgment in favor of Rylee without filing a postjudgment motion challenging that judgment.

<u>Standard of Review</u>

Although there are some conflicts in the evidence regarding some facts that are not material to our decision in this case, the evidence regarding the facts that are material to our decision in this case is not in dispute. Therefore, the ore tenus rule does not apply to our review in this case. See <u>Beavers v. Walker Cnty.</u>, 645 So. 2d 1365, 1372-73 (Ala. 1994)

(holding that "where the facts are not disputed the <u>ore tenus</u> standard does not apply). The present appeal involves issues regarding whether the trial court correctly ascertained the law and whether it correctly applied the law to the facts; therefore, our standard of review is de novo. <u>Id.</u>

<u>Analysis</u>

Logically, the first issue we must address is whether the Bank gave Rylee, as the secondary obligor, the notice he was entitled to under the Alabama Code. The Bank argues that he was given notice in compliance with the Alabama Code because, it says, the Bank put both Davis's and Rylee's names on the letters it mailed to Davis's address. Rylee argues that he was not given the notice required by the Alabama Code because, he says, putting his name on a letter sent to Davis's address but not sent to his address was not reasonably calculated to provide him with that notice.

Subsections (b) and (c) of § 7-9A-611, Ala. Code 1975, require a secured party that repossesses collateral to send notice of its intent to dispose of the collateral to both the debtor, i.e., the primary obligor, and any secondary obligor. Subsections (b) and (c) of § 7-9A-616, Ala. Code

6

1975, require a secured party that has disposed of collateral to provide obligors of the debt secured by the collateral with an explanation of any deficiency they owe after the disposition of the collateral.

In pertinent part, § 7-9A-610(b), Ala. Code 1975, provides: "<u>Every</u> <u>aspect</u> of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." (Emphasis added.) Subsections (b) and (c) of § 7-9A-611 provide that, in consumer transactions, a secured party that disposes of collateral must give notice to the debtor and any secondary obligor of the secured party's intent to dispose of the collateral before disposing of it. The Official Comment to § 7-9A-611 states:

> "2. Reasonable Notification. This section requires a secured party who wishes to dispose of collateral under Section [7-9A-610] to send 'a reasonable signed notification of disposition' to specified interested persons, subject to certain exceptions. <u>The notification must be reasonable as to the manner in which it is sent</u> ...."

(Emphasis added.)

As noted above, the Bank argues that mailing a letter that named both Davis and Rylee as recipients but was addressed to only Davis's address was sufficient to comply with the §§ 7-9A-611(b) and (c) and 7-9A-616(b) because, the Bank says, Davis's address was the last known

7

address of the obligors. In the Bank's action, Rylee was served with process at 9823 Hollowbrook Avenue, the address listed for him on the contract, and the Bank perfected service on Rylee at that address without having to obtain an alias summons. Thus, the trial court reasonably could have inferred that the Bank had the ability to verify that Rylee still lived at 9823 Hollowbrook Avenue before it sent the notices required by §§ 7-9A-611(b) and (c) and 7-9A-616(b) and, for whatever reason, elected not to do so. We agree with Rylee that mailing a letter with his name on it to Davis's address, without also sending one to his address of 9823 Hollowbrook Avenue, was not a commercially reasonable way to send the notices required by those Code sections. See § 7-9A-610(b).

Having determined that the way the Bank sent Rylee the notices required by §§ 7-9A-611(b) and (c) and 7-9A-616(b) was not commercially reasonable, we now consider what legal effect that had on the Bank's claim against Rylee seeking to recover the deficiency. The trial court de facto barred the Bank from recovering the deficiency from Rylee without citing any legal authority indicating why Rylee was entitled to a complete bar against the Bank's ability to recover the deficiency from him.

Citing <u>Folks v. Tuscaloosa County Credit Union</u>, 989 So. 2d 531 (Ala. Civ. App. 2007), a plurality opinion, the Bank argues that Rylee's remedy was a setoff against the amount of the deficiency and that the trial court erred because it completely barred the Bank from recovering its deficiency instead of granting Rylee a setoff. Although <u>Folks</u> is only a plurality opinion, we find its reasoning regarding the effect of a creditor's conducting a commercially unreasonable sale of collateral on its ability to recover a deficiency sound, and we adopt its reasoning regarding that issue. The <u>Folks</u> court held that the proper remedy was a setoff. Explaining its reasoning for reaching that conclusion, the <u>Folks</u> court stated:

> "Before the enactment of revised Article 9A, Title 7, Ala. Code 1975, which became effective in Alabama in 2002, Alabama decisions applied a setoff approach to deficiency judgments in both consumer and nonconsumer transactions. <u>See</u> <u>Stone v. Cloverleaf Lincoln-Mercury, Inc.</u>, 546 So. 2d 388 (Ala. 1989) (applying the setoff approach to the disposition of a consumer-use automobile); <u>Underwood v. Coffee County Bank</u>, 668 So. 2d 10 (Ala. Civ. App. 1994) (same); and <u>First Nat'l Bank of Dothan v. Rikki Tikki Tavi, Inc.</u>, 445 So. 2d 889, 890 (Ala. 1984) (applying the setoff approach to the disposition of commercial-use restaurant equipment). Under the setoff approach, a secured party's failure to have conducted a sale or disposition of collateral in a commercially reasonable manner does not absolutely bar the secured party from recovering the deficiency between the amount due on the secured debt and the proceeds of the sale or disposition of the

9

collateral. Rather, the debtor is entitled to set off any loss proven at trial against the deficiency owed to a secured party. See Stone, 546 So. 2d at 390.

"Under revised Article 9A, the Alabama legislature adopted a rebuttable-presumption approach to deficiency judgments only in nonconsumer transactions. See § 7-9A-626(a)(4), Ala. Code 1975. According to the rebuttable-presumption approach, if a secured party does not conduct a sale or disposition of collateral in a commercially reasonable manner, the value of the collateral is presumed to be equivalent to the debtor's deficiency unless the secured party proves otherwise. § 7-9A-626(a)(4), Ala. Code 1975.

"Section 7-9A-626, Ala. Code 1975, provides, in pertinent part:

"'(a) Applicable rules if amount of deficiency or surplus in issue. In an action arising from a transaction, other than a consumer transaction, in which the amount of a deficiency or surplus is in issue, the following rules apply:

"'....

"'(3) Except as otherwise provided in [Ala. Code 1975, §] 7-9A-628, if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:

10

"'(A) the proceeds of the collection, enforcement, disposition, or acceptance; or

"'(B) the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance.

"'(4) For purposes of paragraph (3)(B), the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees unless the secured party proves that the amount is less than that sum.

"'....

"'(b) <u>Non-consumer transactions; no inference.</u> The limitation of the rules in subsection (a) to transactions other than consumer transactions is intended to leave to the court the determination of the proper rules in consumer transactions. <u>The court may not infer from that limitation the nature of the proper rule in consumer transactions and may continue to apply established approaches.</u>'

"(Emphasis added.) The Official Comment to § 7-9A-626 explains:

11

"'Courts construing former [UCC] Section 9-507 [former § 7-9-507 in Alabama's version of the UCC] disagreed about the consequences of a secured party's failure to comply with the requirements of former Part 5. Three general approaches emerged. Some courts have held that a noncomplying secured party may not recover a deficiency (the "absolute bar" rule). A few courts held that the debtor can offset against a claim to a deficiency all damages recoverable under former Section 9-507 resulting from the secured party's noncompliance (the "offset" rule). A plurality of courts considering the issue held that the noncomplying secured party is barred from recovering a deficiency unless it overcomes a rebuttable presumption that compliance with former Part 5 would have yielded an amount sufficient to satisfy the secured debt. In addition to the nonuniformity resulting from court decisions, some States enacted special rules governing the availability of deficiencies.'

"The Folkses recognize that Alabama courts have previously applied the setoff approach to deficiency judgments, and they acknowledge that § 7-9A-626(a)(4) adopts the rebuttable-presumption approach only in nonconsumer cases. Nevertheless, the Folkses assert that § 7-9A-626(a)(4) supplants Alabama decisions applying the setoff approach to deficiency judgments. The Folkses contend that pursuant to § 7-9A-626(a)(4), either the rebuttable-presumption approach or the absolute-bar rule applies to deficiency judgments in consumer transactions.

"Although there are a number of policy considerations and rationales that might be advanced either for adopting the rebuttable-presumption approach to deficiency judgments or for maintaining Alabama's current setoff approach, we do not find it necessary to outline any of those considerations here.

When the Alabama legislature revised the Alabama Code provisions regarding secured transactions, the legislature had the opportunity to adopt the rebuttable-presumption approach to deficiency judgments in consumer transactions. Instead, our legislature chose to enact § 7-9A-626, which provides in subsection (b) that the adoption of the rebuttable-presumption approach to deficiency judgments in nonconsumer transactions is 'intended to leave to the court the determination of the proper rules in consumer transactions.' Subsection (b) further provides that an Alabama court 'may not infer from [the application of the rebuttable-presumption approach in nonconsumer transactions] the nature of the proper rule in consumer transactions and <u>may continue to apply established approaches</u>.' (Emphasis added.) Because our legislature declined the opportunity to modify the approach to deficiency judgments in consumer transactions established by Alabama caselaw, we hold that it implicitly accepted the use of the setoff approach that had been followed under the former Code provisions. We, therefore, decline to overrule the cases that have applied the setoff approach or to mandate the application of the rebuttable-presumption approach in consumer transactions."

989 So. 2d at 535-37.

Rylee argues that we should not adhere to the reasoning and conclusion of <u>Folks</u> because, he says, <u>Folks</u> is distinguishable from the present case because it involved a sale of collateral that was commercially unreasonable because the secured party sold the collateral for less than it was worth. However, a failure to give the obligors the notice required before and after the sale of repossessed collateral is just as commercially

13

unreasonable as selling the collateral for less than it is worth. See § 7-9A-610(b) ("Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." (emphasis added)); Stone v. Cloverleaf Lincoln-Mercury, Inc., 546 So. 2d 388, 390 (Ala. 1989) (recognizing that, under the statutory predecessor of § 7-9A-610(b), "[f]ailure to transmit notice, or transmission of insufficient notice, is in and of itself commercially unreasonable behavior).

Accordingly, we reverse the trial court's judgment and remand the case to the trial court for it to determine the amount of setoff, if any, to which Rylee is entitled. The Bank argues that we should rule on the issue of how much setoff Rylee is entitled to in this appeal; however, that issue is not ripe for appellate review because the trial court has not had the opportunity to rule on it.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson and Bowden, JJ., concur.

Edwards, J., concurs in the result, without opinion.

14